

# FILED

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN JAN **2 7** 2005
DISTRICT OF OKLAHOMA

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| DONNA BYNUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 04-CV-515EA(C) |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, LLC., | ) | |
| as assignee by CYGNET-FMAC, | ) | |
| CAVALRY SPVI, L.L.C., REYNOLDS, | ) | |
| RIDINGS, VOGT and MORGAN, and | ) | |
| BENJAMIN HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT THEREOF

Defendants, Reynolds, Ridings, Vogt & Morgan (RRVM) and Benjamin Harris (Harris), in

accordance with Rule 56 of the Federal Rules of Civil Procedure, request that summary judgment

be entered in their favor in this case. This is an action by the plaintiff seeking actual damages and

statutory damages for violations of the Fair Debt Collection Practices Act (FDCPA). As will be

addressed in the motion, RRVM and Harris admit that they mailed a letter to the plaintiff and filed

a lawsuit against the plaintiff on an account that the plaintiff discharged in a prior bankruptcy.

RRVM and Harris did not become aware of the plaintiff's bankruptcy until after the lawsuit had been

filed and after their client, Cavalry Portfolio Services, Inc.(Cavalry), co-defendant in this case,

advised RRVM and Harris of the bankruptcy filing. RRVM and Harris have asserted the defense

of bona fide error. The issue in this lawsuit and this Motion for Summary Judgment is whether these

defendants, based on undisputed facts, should prevail on their bona fide error defense.

## UNDISPUTED FACTS

RRVM and Harris submit that the following are undisputed facts.

1. Plaintiff filed a Chapter 7 Bankruptcy Petition on November 29, 2000.

2. Plaintiff was granted a discharge in her bankruptcy on February 27, 2001.

3. Cygnet-FMAC was listed as a creditor in the plaintiff's bankruptcy.

4. Some time after plaintiff received her discharge in bankruptcy, Cygnet-FMAC assigned its claim against the plaintiff to Cavalry Portfolio Services.

5. On or about March 19, 2004, Cavalry mailed a letter to RRVM referring an account against Donna Bynum for collection. Included with the letter referring the claim for collection were documents supporting the claim including two affidavits, a credit application, a contract, a lien entry form, a statement of account and a document display. (See Exhibits 1-9)

6. On April 5, 2004, the defendants mailed a letter to Bynum. (See Exhibit 10)

7. Bynum did not respond to the letter.

8. On May 20, 2004, defendants filed a lawsuit in the District Court of Rogers County, Oklahoma, on behalf of Cavalry against Bynum. (See Exhibit 11)

9. On May 27, 2004, defendants received an e-mail from Cavalry advising that Bynum had been discharged in bankruptcy on February 27, 2001. (See Exhibit 12)

10. RRVM through Harris contacted the process server and instructed him not to serve Bynum with the lawsuit. The process server did not serve Bynum. (See Exhibit 13)

11. A Dismissal With Prejudice was filed in the Rogers County action on June 10, 2004. (See Exhibit 14)

12. Neither Harris nor any employee of RRVM have ever talked to Bynum, either by telephone or in person. (See Affidavit)

13.    RRVM has an agreement and understanding with Cavalry that Cavalry will not send claims to RRVM for collection if the debtor has filed bankruptcy.  (See Affidavit)

14.    RRVM has policies and procedures in place for the handling of consumer claims.  (See Affidavit)

## ARGUMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Rule 56 of the Federal Rules of Civil Procedure.  See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A genuine issue of material fact is not shown by the mere existence of some alleged factual dispute between the parties.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986).  Rather, a genuine issue of material fact exists only if "a fair minded jury could return a verdict for the [nonmoving party] on the evidence presented."  See *Anderson*, 477 U.S. at 252.

The case against RRVM and Harris can be "boiled" down to essentially a single issue.  It is undisputed that RRVM and Harris mailed a letter to the plaintiff and filed the lawsuit on an account that the plaintiff had previously discharged in her Chapter 7 Bankruptcy.  Under the strict liability provisions of the FDCPA, RRVM and Harris will concede that the mailing of the letter violated the provisions of the FDCPA.  However, based on the ruling of the Tenth Circuit in *Johnson v. Riddle*, 305 F. 3d. 1107 (10th Circuit 2002) the filing of the lawsuit would not be a violation of the FDCPA because the lawsuit was never served on Bynum.  At page 1113 the Court states:

"We hold that, where the plaintiff's FDCPA claim arises from the instigation of a debt collection suit, the plaintiff does not have a "complete and present cause of

action," Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522

U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997), and thus no violation occurs

within the meaning of § 1692k(d), until the plaintiff has been served.  If the debt

collector files suit against the FDCPA plaintiff but then elects to call off the process

server and abandon the collection suit before the plaintiff has been served, it cannot

be said that the abandoned lawsuit constitutes an "attempt to collect" on the debt

within the meaning of the FDCPA, 15 U.S.C. § 1692f.

RRVM and Harris have asserted the defense of a bona fide error as provided at 15 U.S.C.

§1692k(c) of the FDCPA which states:

> "A debt collector may not be held liable in any action brought under this sub-chapter
>
> if the debt collector shows by a preponderance of evidence that the violation was not
>
> intentional and resulted from a bona fide error notwithstanding the maintenance of
>
> procedures reasonably adapted to avoid any such error."

RRVM and Harris contend that they were unaware that plaintiff had filed a Chapter 7 bankruptcy

until they received an e-mail from their client, the co-defendant Cavalry Investment Services,

advising that the plaintiff had previously filed a bankruptcy.  Upon receipt of the e-mail the pending

lawsuit was immediately dismissed with prejudice.  RRVM and Harris had no contact with the

plaintiff by telephone.  RRVM and Harris have attached Affidavits setting forth their agreement with

Cavalry and the procedures relating to the handling of consumer claims subject to the FDCPA.

Therefore, the issue before the Court is whether based upon the undisputed facts, the attached

Exhibits and Affidavits, these defendants have met their burden in asserting the bona fide error

defense.

Prior decisions of courts deciding issues similar to the instant case provide guidance as to

how other courts have addressed this issue. *Johnson v. Riddle*, 305 F. 3d. 1107 (10th Circuit 2002),

*Johnson v. Riddle*, 296 F. Supp. 2d. 1283 (Dist Utah 2003), *Jenkins v. Heintz*, 124 F. 3d. 824 (7th Circuit 1997) and *Turner v. J.V.D.B. & Associates, Inc.*, 330 F. 3d. 1991 (7th Circuit 2003).

The Tenth Circuit Court outlines three elements that a defendant must prove by a preponderance of the evidence to prevail on a bona fide error of defense. These elements are: 1) the violation was unintentional, 2) bona fide error and 3) made despite the maintenance of procedures reasonably adapted to avoid the violation. *Johnson, supra*.

In this case the error was unintentional. RRVM has performed collection services for creditors for years. Clearly, the firm is aware of the implications of a bankruptcy filing and would not pursue collection of claim where the debtor has filed bankruptcy. Not only is continued pursuit of collection of a debt a violation of the automatic stay provisions of the Bankruptcy Code but also unprofitable. This is further evidenced by the fact that the lawsuit was immediately dismissed as soon as RRVM received notice of the bankruptcy filing by Ms. Bynum.

The error was also bona fide. RRVM receives hundreds of claims from Cavalry. These claims, like the instant claim, include affidavits and documentation to support the claims. The affidavits verify that the debt is due and owing. In this case, there is no evidence of Cavalry routinely sending claims to RRVM on debtors who have already filed bankruptcy. Based on the attached affidavits, the undisputed evidence shows that this claim and one other claim may be the only claims that Cavalry ever sent to RRVM where the debtor had already filed bankruptcy prior to the claims being forwarded to RRVM. RRVM had a good faith basis to believe that the claim it received on Ms. Bynum from Cavalry was a valid claim, supported by affidavits and documentation with the claim and that Ms. Bynum had not discharged the debt in a bankruptcy proceeding. Indeed, Cavalry employs an independent third party, Banko/Lexus Nexus to check for bankruptcy filings on a daily basis. (See affidavit) In spite of these procedures in place to check for bankruptcies Cavalry did send the Bynum claim to RRVM.

RRVM along with Cavalry have established procedures in place to avoid violations of the FDCPA. (See attached Affidavits)  Clearly, one of the initial inquiries is whether the debt collector has an agreement with its client not to forward any accounts where the account debtor has filed bankruptcy.  In this case, it is undisputed that such an agreement exists.  Another inquiry is whether a pattern exists of a client forwarding accounts where the debtor has filed bankruptcy on a consistent basis or whether this occurs or happens on a very infrequent basis lending to the belief that an account may have slipped through the system.  In this case, the evidence suggests that it may have occurred on only two occasions between Cavalry and RRVM on an active file count of approximately one thousand four hundred files.  Finally, the courts review the procedures of the debt collector.  In this case, it is clear that no correspondence or legal pleading leaves the offices of RRVM until it has been reviewed and signed by a lawyer.  Lawyers of RRVM remain updated on the current status of case law related to the FDCPA and continually monitor and instruct staff on such matters.  Because RRVM is a small firm with only three lawyers assigned collection matters and two legal assistants working on collection matters, RRVM submits that more than ample procedures are in place to insure compliance with the FDCPA.

## CONCLUSION

RRVM and Harris submit that a fair minded jury, using the standards set forth in §1692k(c) providing that the violation was not intentional and that the error resulted despite procedures adapted to avoid such error, could not, after considering the undisputed evidence, return a verdict for the plaintiff.  Accordingly, RRVM and Harris request that summary judgment be granted in their favor.

Respectfully submitted,

By: _____

James W. Vogt, OBA #9243
2200 First National Center
120 North Robinson
Oklahoma City, OK 73102
(405) 232-8131 Telephone
(405) 232-7911 Facsimile
Attorney for Benjamin Harris and
Reynolds, Ridings, Vogt & Morgan

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on January 27th, 2005, a true and correct copy of the above was mailed via first-class mail with postage prepaid thereon, to:

Bruce Spence
4143 E. 31st Street
Tulsa, OK 74135

Mark Craige
5310 E. 31st Street, Suite 1100
Tulsa, OK 74135

_____



7 SKYLINE DRIVE HAWTHORNE NY 10532    (800) 724-1757                    Approved 3/19/2004

3/19/2004



REYNOLDS, RIDINGS, VOGT & MORGAN
2200 1ST NAT CTR 120 N. ROBINSON
OKLAHOMA CITY OK 73102

Dear Sir or Madam:

Enclosed please find the following account(s) that we are referring to you to proceed against the debtor(s).

| | |
|---|---|
| Cavalry Reference Number: | 02020261 |
| Principal Balance: | 2062.26 |
| Interest Rate | 5% |

DONNA BYNUM
526 W DENNY
CATOOSA OK 74015
Social Security Number: 441563189

Please acknowledge receipt of this account and immediately commence a suit against the debtor(s) in the name of Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES, as assignee of CYGNET - FMAC.

Please obtain judgment against the debtor(s).  After securing judgment, please advise for further instructions.

Don Strauch
Executive Vice President



**DEFENDANT'S EXHIBIT**
2

7 SKYLINE DRIVE HAWTHORNE NY 10532      (800) 724-1757

3/19/2004



DONNA BYNUM
526 W DENNY
CATOOSA OK 74015

## Statement of Account

| | |
|---|---|
| Cavalry Reference Number: | 02020261 |
| Original Account Number: | 0317099 |
| Original Institution: | CYGNET - FMAC |

| | |
|---|---|
| Current Statement Date | 3/19/2004 |
| Date of Charge Off | 12/7/1999 |
| Date of Purchase | 6/18/2003 |
| Last Payment Date | 8/14/2001 |
| Principal as of 3/19/2004 | 2062.26 |
| Accumulated Interest | $76.55 |
| Account Balance | $2138.81 |
| Costs | $0 |
| Other Charges | $0 |
| Interest Rate | 5% |

Please be advised this communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

Account 02020261

**BUYER(S) NAME & ADDRESS** *(Last Name First)*

DONNA BYNUM

ROUTE 2 BOX 85
INOLA OK 74036

**SELLER/SECURED PARTY**

EAST TULSA LODGE, INC.
4627 S. MEMORIAL
TULSA, OK                    74145

NUMBER

DATE OF SALE
27 NOV 1996

## DISCLOSURES

| 1. ANNUAL PERCENTAGE RATE The cost of the credit as a yearly rate. | 2. FINANCE CHARGE The dollar amount the credit will cost. | 3. AMOUNT FINANCED The amount of credit provided to Buyer or on his behalf as itemized below. | 4. TOTAL OF PAYMENTS The amount Buyer will have paid after buyer has made all payments as scheduled. | 5. TOTAL SALES PRICE (Add line 4 and box 4) The total cost of the purchase on credit, including Buyer's down payment of $320.00 |
|---|---|---|---|---|
| 19.00 % | 2691.24 | 6039.00 | 8730.24 | 9050.24 |

## PAYMENT SCHEDULE WILL BE:

| NUMBER OF REGULAR PAYMENTS | AMOUNT OF PAYMENTS |  |
|---|---|---|
|  | Regular | (Your Final Payment) |
| 48 | 181.88 | N/A |

| FREQUENCY OF PAYMENTS | | DUE DATE OF PAYMENTS | |
|---|---|---|---|
| Monthly ☒ | Final Payment 11 JAN 1997 | OTHER PAYMENTS DUE SAME DAY OF EACH PERIOD | Final Payment 11 DEC 2000 |

Prepayment: If Buyer pays off early, Buyer will not have to pay a penalty.

See Retail Installment Sales Contract, Security Agreement and related contract documents for additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## SECURITY/COLLATERAL

Boxes checked apply to this transaction:

☒ The signers of the Security Agreement are giving a security interest in the following property:

93 NISS SENT
1N4EB32A1PC728805
4DR GOLD

**DEFENDANT'S EXHIBIT 3**

☐ Collateral securing other sales by Seller to Buyer also secures this contract.

☐ Assumption Policy: Someone buying Buyer's lease:

☐ may, subject to certain conditions, be allowed to assume the remainder of the mortgage on the original terms.

☐ cannot assume the remainder of the mortgage.

Fees Paid in Cash by Buyer: Filing Fees $ ___N/A___    Non-Filing Insurance $ ___N/A___

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| $ 6349.00 | 1 | CASH PRICE (Including accessories, Sales Tax, Service and Service Contracts) |
| $ 320.00 | 2 | Cash Down Payment |
| $ N/A | 3 | Trade-in — N/A |
| $ N/A | 4 | Payoff Balance on Trade to |
| $ N/A | 5 | Net Allowance on Trade-in (Subtract line 4 from line 3) |
| $ 320.00 | 6 | Total Down Payment (Add lines 2 and 5) |
| $ 6029.00 | 7 | Unpaid Balance of Cash Price (Subtract line 6 from line 1) |
| | | Amounts Paid to Others on Behalf of Buyer: |
| $ N/A | 8 | Credit Life Insurance Premium to |
| $ N/A | 9 | Disability Insurance Premium to |
| $ N/A | 10 | Property Insurance Premium to |
| $ 10.00 | 11 | Filing and Releasing Fees to Public Officials |
| $ N/A | 12 | License, Title and Registration to — VSI |
| $ N/A | 13 | To |
| $ 10.00 | 14 | Total Amount Paid to Others on Behalf of Buyer (Add lines 8 thru 13) |
| $ N/A | 15 | Less - Prepaid Finance Charge |
| $ 6039.00 | 16 | Amount Financed (Add lines 7 and 14 and subtract line 15) |

If this contract arises from a consumer credit sale of a used vehicle (as defined in Part 455 of Title 16 of the Code of Federal Regulations) then the information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

### DISCLAIMER OF WARRANTIES

This Seller's salesmen may have made oral statements about the merchandise described in this contract. Such statements do not constitute warranties, shall not be relied on by the Buyer, and are not part of the contract for sale. The entire contract is embodied in this writing. This writing constitutes the final expression of the parties agreement, and it is a complete and exclusive statement of the terms of that agreement. The parties agree that the implied warranties of MERCHANTABILITY and fitness for a particular purpose and all other warranties, express or implied, are EXCLUDED from this transaction and shall not apply to the goods sold.

Form 03 0677 5 Simple Interest

### INSURANCE STATEMENT

CREDIT LIFE AND DISABILITY INSURANCE are not required to obtain this sale. Such insurance for unpaid interest and principal of loan and for term of loan will only be provided if available and if Buyer requests Seller to obtain such insurance by indicating insurance desired and signing below.

| | | |
|---|---|---|
| ☐ Life Insurance on | ☐ Buyer | ☐ Co-Buyer |
| Cost for One Person | | $ N/A |
| Cost for Two Persons | | $ N/A |
| ☐ Disability Insurance on | ☐ Buyer | ☐ Co-Buyer |
| Cost for One Person | | $ N/A |

PROPERTY AND VENDOR'S SINGLE INTEREST INSURANCE may be obtained by Buyer through any person of his choice. If obtained through Seller, the cost for term of contract will be:

☐ Property Insurance $ N/A

☐ Vendor's Single Interest Insurance $ N/A (The buyer hearing this policy waives his right to subrogation against Buyer)

☐ Buyer desires the insurance checked above.

X _____ Date 11-27-16

X _____ Date _____

### NOTICE OF ASSIGNMENT

DATE _____

Dear Customer:

We have purchased this Retail Installment Sales Contract between you and the Seller named above.

We have taken assignment of the rights under the contract and other documents of this transaction, including all rights to payment, therefore, all payments should be made directly to our office.

We welcome you as a customer, and should you have any question concerning this contract or any of our other financial services, please contact us at Creditor/Assignee address shown below.

Sincerely,

Representing Creditor/Assignee

Enclosures: ☐ Coupon Book    ☐ _____

### CREDITOR/ASSIGNEE

FIRST MERCHANT ACCEPTANCE CORP
3030 N W EXPRESSWAY STE 875
OKLA CITY, OK  73112

### BUYER(S) SIGNATURES

I/We agree to terms of this Retail Installment Sales Contract, the Agreement, Disclosure Statement and Payment Schedule, Additional Provisions printed on reverse side hereof. I/We have completed a copy of this form as of Date of Sale indicate applicable, the window form is attached and is complete and correct.

X _____

© Copyright 11/93 Ameri...

ADDITIONAL PROVISIONS ON REVERSE SIDE

ASSIGNEE

DEFENDANT'S
EXHIBIT
4

## ADDITIONAL PROVISIONS

*BUYER EXPRESSLY WARRANTS, COVENANTS AND AGREES:*

### WARRANTIES AND COVENANTS

1. **Financial Information.** All applications, balance sheets, earnings statements, other financial information and other representations which have been, or may hereafter be, furnished Seller/Secured Party to induce it to enter into or continue a financial transaction with Buyer fairly represent the financial condition of Buyer as of the date for the period shown therein, and all other information, reports, documents, papers and data furnished to Seller/Secured Party are or shall be, at the time furnished, correct and current in all material respect and complete insofar as completeness may be necessary to give Seller/Secured Party a true and accurate knowledge of the subject matter. There has been no material change in the financial condition of Buyer since the effective date of the last furnished financial information which has not been reported to Seller/Secured Party in writing.

2. **Ownership Free of Encumbrances.** Buyer will not permit any lien or security interest other than the Seller/Secured Party's security interest to attach to any of the Collateral, will not permit the Collateral to be levied upon, garnished or attached under any legal process, or permit anything to hinder that may impair the value of the Collateral or the security interest afforded hereby.

3. **Financing Statement.** Buyer agrees to join with Seller/Secured Party in executing one or more Financing Statements from time to time, in order to perfect, or to continue perfection of, the security interest herein granted. A carbon, photographic or other reproduction of this Agreement or of any Financing Statement is sufficient as a Financing Statement.

4. **Residence, Use and Location.** Statements made herein or otherwise as to Buyer's address and as to location, possession and use of the Collateral are true. Buyer agrees to immediately notify Seller/Secured Party in writing of any proposed change in Buyer's address and to provide such notification prior to the proposed effective date thereof. Buyer will not permit any of the Collateral to be removed from the location specified herein with out the written consent of Seller/Secured Party.

5. **Sale, Lease or Disposition of Collateral Prohibited.** Buyer shall not sell, transfer, exchange, lease or otherwise dispose of the Collateral or any part thereof or the Buyer's rights therein without first obtaining the prior written consent of Seller/Secured Party. The consent of Seller/Secured Party to any such disposition in any requirements (including, but not limited to, the application of proceeds to obligations secured hereby) which requirements the Seller/Secured Party deems to be for the protection of its security interest; and, it is understood and agreed that such consent will not be deemed to be effective unless and until such requirements and conditions have been fulfilled.

6. **Maintenance and Inspection.** Buyer at own expense shall keep the Collateral in good condition and repair, shall not permit its use unsafe or unauthorized or allowed to deteriorate except for the ordinary wear and tear of its intended primary use, shall prudently protect the Collateral from the elements, shall use the Collateral lawfully and not permit its illegal use or its use in a manner not permitted by the written insurance coverage, and shall permit and facilitate Seller/Secured Party to examine and inspect the Collateral at any time and wherever located.

7. **Taxes.** Buyer shall promptly pay any and all taxes, assessments and license fees with respect to the Collateral or the use of the Collateral.

8. **Affixing to Real or Personal Property Prohibited.** Buyer shall not permit any of the Collateral to become an accession or affixed to other personal property or to become attached or affixed to real property without first obtaining prior written consent of Seller/Secured Party. The consent of Seller/Secured Party may be conditioned upon any requirements (including, but not limited to, the subrogation of other interest owners in and to such personal or real property to the rights and interest of Seller/Secured Party) which requirements Seller/Secured Party deems to be for protection of its security interest; and, it is understood and agreed that such consent will not be deemed to be effective until such conditions and requirements have been fulfilled.

9. **Adequate Insurance.** Buyer at own expense shall insure Collateral with companies acceptable to Seller/Secured Party against such casualties and in such amounts as prudent and adequate to protect Seller/Secured Party as to such risks. The insurance policies shall be written for benefit of Buyer and Seller/Secured Party as their interests appear and such policies or certified copies thereof evidencing same shall be furnished to Seller/Secured Party within ten days of date of this Agreement. All policies of insurance shall provide for at least ten days prior written notice of cancellation to Seller/Secured Party. Seller/Secured Party may act as attorney for Buyer in the procuring of insurance, in making, adjusting, and settling claims under or canceling such insurance and in endorsing Buyer's name on any draft or checks drawn by insurers of Collateral.

10. **Expenditures of Seller/Secured Party.** At its option and after any written notice to Buyer required by law, which notice Buyer and Seller/Secured Party hereby agree is sufficient if mailed, postage prepaid, to the address of Buyer provided for herein at least ten days before the commencement of the performance of the duties specified therein, if agreed Seller/Secured Party may discharge taxes, liens, security interests or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, for the maintenance and preservation thereof and for insurance thereon. Buyer shall be liable for and agree to pay Seller/Secured Party for all expenditures of Seller/Secured Party for taxes on the Collateral, for the discharge of liens, security interest or other encumbrances on the Collateral, for the repair of any damage to the Collateral, and for all costs, attorney's fees and other disbursements of Seller/Secured Party in connection with the foregoing. Buyer agrees promptly to reimburse Seller/Secured Party for such expenditures and until such reimbursement the amount of each expenditure shall be considered held as secured by the terms of this Security Agreement and shall be subject to the ANNUAL PERCENTAGE RATE provided herein. In addition, Buyer shall be liable for and agree to pay Seller/Secured Party for all costs, attorney fees and other disbursements of Seller/Secured Party as allowed by law as provided for herein in the enforcement or collection of any note, security, or liability of Buyer to Seller/Secured Party, or in the redemption upon or the enforcement of any of the amounts recoverable, contract right, promissory note, chattel paper, lease, instrument, document or other Collateral in which Seller/Secured Party have such security interest. Buyer agrees promptly to reimburse Seller/Secured Party for all such expenditures and until such reimbursement the amount of all expenditures shall be considered held as liability of Buyer to Seller/Secured Party which is secured by this Security Agreement.

### EVENTS OF DEFAULT

Buyer shall be in default under this Agreement upon the happening of any one or more of the following events or conditions, herein called "Events of Default":

1. Any warranty, covenant, agreement, representation, financial information or statement made or furnished to Seller/Secured Party by or on behalf of Buyer to induce Seller/Secured Party to enter into this Agreement, or in conjunction therewith, is violated or proves to have been false in any material respect when made or furnished.

2. Any payment required hereunder or under any other note or obligation of Buyer to the Seller/Secured Party to others is not made when due or in accordance with terms of the applicable contract.

3. Buyer defaults in the performance of any covenant, obligation, warranty, or provision contained in any Loan Agreement or in any other note or obligation of Buyer to Seller/Secured Party or to others.

4. The occurrence of any event or condition which results in acceleration of the maturity of any obligation of Buyer to Seller/Secured Party or to others under any note, indenture, agreement, or undertaking.

5. The making of any levy against or seizure, garnishment or attachment of any Collateral; the consensual encumbrance thereof by Buyer, or the sale, lease or other disposition of Collateral by Buyer without the prior written consent of Seller/Secured Party as required elsewhere in this Agreement.

6. Loss, theft, substantial damage or destruction of Collateral.

7. When in the judgment of Seller/Secured Party, the Collateral becomes unsatisfactory or insufficient in character or value, and upon request Buyer fails to provide additional Collateral as required by Seller/Secured Party.

8. Any time Seller/Secured Party in its sole discretion believes the prospect of payment or performance of any liability, covenant, warranty or obligation secured hereby is impaired.

9. The death, dissolution, termination of existence or insolvency of Buyer, the appointment of a receiver over any part of Buyer's property or any part of the Collateral, an assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency law by or against Buyer or any guarantor or surety for Buyer.

### REMEDIES

Upon the occurrence of an Event of Default, and at any time thereafter, Seller/Secured Party may, at its option and without notice or demand to Buyer exercise any otherwise provided by law, exercise any and all rights and remedies provided by the Uniform Commercial Code of the state in which Seller/Secured Party is located, as well as all other rights and remedies possessed by Seller/Secured Party, including but not limited to:

1. Declare all liabilities secured hereby immediately due and payable, and/or proceed to enforce payment and performance of all liabilities secured hereby, provided that, upon any prepayment in full of the unpaid balance of such liabilities, the Buyer shall be entitled to a rebate of any unearned portion of any finance or other charge in accordance with law.

2. Require Buyer to assemble Collateral and make it available to Seller/Secured Party at place designated by Seller/Secured Party which is reasonably convenient to both parties.

3. Repossess the Collateral, and for this purpose Seller/Secured Party is hereby granted authority to enter into and upon any premises on which the Collateral or any part may be situated, and to remove it.

4. Possess all books and records evidencing or pertaining to the Collateral, and for this purpose Seller/Secured Party is hereby given authority to enter into and upon any premises on which books and records or any part of them may be situated, and to remove them.

5. Transfer any of the Collateral or evidence thereof into its own name or that of a nominee and receive the proceeds therefrom and hold the same as security for the liabilities of Buyer to Seller/Secured Party or apply it on

or against any such liability. Seller/Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, release or realize upon Collateral, in its own name or in the name of the Buyer as Seller/Secured Party may determine.

6. Sell or otherwise dispose of the Collateral. Unless Collateral is of a type customarily sold on a recognized market or is perishable or threatens to decline speedily in value, Seller/Secured Party will give Buyer reasonable notice of the time and place of any public sale, or of the time after which any private sale or any other intended disposition is to be made. Any requirement of such notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer provided for herein at least ten days before the time of such sale or disposition or action. Pending any such disposition, Seller/Secured Party shall be entitled to retain Collateral, and all reasonable costs and expenditures of realizing on the security interest including without limitation, court costs, fees for replevin bonds, storage, repossession costs, repair and preparation costs for sale, selling costs, and reasonable attorney fees as set forth in the RETAIL INSTALLMENT SALE CONTRACT. All such costs are secured by the security interest in the Collateral covered herein.

7. Seller/Secured Party shall not be liable for the failure to collect any amount, enforce any contract right, or for any other act or omission on the part of Seller/Secured Party, its officers, agents or employees, except as the same constitutes a lack of good faith or failure to act in a commercially reasonable manner. Seller/Secured Party shall have acted in a commercially reasonable manner if its action or inaction is consistent with general banking usage in the area of Seller/Secured Party's location, but this standard shall not constitute disapproval of any procedure which may be otherwise reasonable under the circumstances nor require Seller/Secured Party to take necessary steps to preserve rights against prior parties in an instrument or chattel paper.

### GENERAL

1. **Waivers.** No act, delay, or omission, including Seller/Secured Party's waiver of remedy because of any default hereunder, shall constitute a waiver of any of Seller/Secured Party's rights and remedies under this Agreement or any other agreement between the parties. All rights and remedies of Seller/Secured Party are cumulative and may be exercised singularly or concurrently, and the exercise of any one or more remedies will not be a waiver of any other. No waiver, change, modification, or discharge of any of Seller/Secured Party's rights or of Buyer's duties as specified or allowed will be effective unless set in writing and signed by a duly authorized officer of Seller/Secured Party, and, any such waiver will not be a bar to the exercise of any right or remedy on any subsequent default.

2. **Agreement Binding on Assigns.** This Agreement shall inure to the benefit of the successors and assigns of Seller/Secured Party and shall be binding upon the heirs, executors, administrators, successors and assigns of Buyer.

3. **Rights of Seller/Secured Party Assignable.** Seller/Secured Party at any time and at its option may pledge, transfer or assign its rights under this Agreement in whole or in part, and any transferee or assignee shall take all the

rights of Seller/Secured Party as to the rights or parts thereof so pledged, transferred, or assigned. Buyer's rights hereunder may not be assigned.

4. **Joint and Several Responsibility of Buyer.** If more than one Buyer executes this Agreement, the responsibility hereunder shall be joint and several and the reference in Buyer herein shall be deemed to refer to such Buyer.

5. **Separability of Provisions.** If any provisions of this Agreement shall for any reason be held to be invalid or unenforceable, such validity or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid or unenforceable provisions had never been contained herein.

6. This Agreement shall be construed in accordance with the law of the state of location of the office of Seller/Secured Party shown on the reverse hereof.

### ASSIGNMENT BY SELLER AND TERMS

FOR VALUE RECEIVED, Seller hereby sells, assigns, and transfers all of its right, title, and interest in and to the within Contract and the property described therein, to the Assignee shown on the reverse side hereof (herein referred to as "Assignee"), its successors or assigns with power to take legal proceedings in the name of the Seller or Assignee. Seller warrants that said extension of credit complies with all Federal and State laws and regulations; that Seller has taken a step necessary to perfect the lien granted by this agreement as a First lien and to show Assignee as holder thereof; that the documents and paper are genuine and freely executed by the Seller so the person named in this agreement as a First lien and to show Assignee as holder thereof; that the documents and paper are genuine and freely executed and that there was no other fraud, misrepresentation or falsity by Seller to Buyer; that said property is free from all liens and encumbrances whatsoever, except the within Contract; that the Buyers had legal capacity to enter into this Contract at the time of its execution; and that there is now owing the within Contract the amount as set forth therein.

Seller agrees to repurchase this Contract upon the happening of any of the events in any event thereon any claim or defense against Assignee or Seller arising from any nonperformance of Seller's obligation under this Contract or Seller's violation of any provision of applicable Federal or State law relating to consumer credit, or in the event Assignee secures and any such performance, nonperformance, or violation by Seller which might give rise to the assertion of any such claim or defense, or in the event that any of Seller's warranties is not herein are or become false in any respect, Seller waives notice of protest, nonpayment, and nonperformance of this Contract.

In addition, this Assignment is subject to the provisions set out below in the paragraph (s) initial(s) by Assignor, if any.

INITIALS ____  □ REPURCHASE: Seller guarantees the payment and performance of this Contract, except as otherwise provided in the Repurchase Agreement between the Seller and Assignee.

INITIALS ____  □ GUARANTY: Seller guarantees the payment and performance of this Contract.

INITIALS ____  □ WITHOUT RECOURSE: This Assignment is without recourse against the Assignor.

INITIALS ____  □ FULL RECOURSE: Seller guarantees payment of all amounts due on this contract as and when such payments become due. Seller waives any extension of time made by Assignee, and to repurchase this Contract at any time upon demand after any default by the Buyer.

SELLER  EAST TULSA DODGE, INC.    BY ____    TITLE President    DATE 6/22/96

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

1620202061

Account 02020261



**DEFENDANT'S EXHIBIT**

S

```
ACCT 36438197 A 1          SF DISCLOSURE DISPLAY
I/J T                              DEALER NUMBER   53
_____ DONNA    S  BYNUM            DEALER EAST TULSA DODGE INC
_____ __ _____     RESERVE PARTICIPATION
                                   CASH PARTICIPATION
DATE CONTRACT PURCH    12/11/96    BRANCH NET          2691.24
DATE OF CONTRACT       11/27/96    FEES/TITLE
FIRST PAYMENT DUE DATE 01/11/97    DOCUMENTARY STAMPS
FINAL PAYMENT DUE DATE 12/11/00    NON-FILING INS FEE
                                   LIFE INS CODE/PREM
AMOUNT FINANCED         6039.00    A&H INS CODE/PREM
FINANCE CHARGE          2691.24    PROP INS CODE/PREM
TOTAL OF PAYMENTS       8730.24    PHYSICAL DAMAGE INSURANCE (ADD-ON)
FIRST PAYMENT            181.88      A(1) INS PREM
ORIGINAL PAYMENT         181.88           INCEPTION DATE
REVISED PAYMENT          181.88           POLICY TERM
NUMBER OF PAYMENTS          48      A(2) INS PREM
APR                       18.97           INCEPTION DATE
BRANCH YIELD              18.97           POLICY TERM
HOLDBACK AMT             100.00      A(3) INS PREM
NON-INSTANT CR(0)/INSTANT CR(1)  0        INCEPTION DATE
SPECIAL LATE WARNING DAY                  POLICY TERM
  F1: DONE-NEXT TASK   F4: PRINT   F6: HELP   F11: RETURN TO PRIOR SCREEN
```

Account 02020261

**DEFENDANT'S EXHIBIT**

tabbie

6

Form 04 0671 & 10/92 American Bank Systems, Inc.

## INSTRUCTIONS

**SECURED PARTY:** ☑ Type one Lien Entry Form for each vehicle. ☐ Verify the accuracy of all information on the Lien Entry Form with the Manufacturer's Statement of Origin (on New Vehicles) or the Certificate of Title (on previously owned vehicles). ☐ Submit Copies 1 thru 6 (with stub and carbons intact), together with the required fee and title documents, to the Motor License Agent within 15 days.

**MOTOR LICENSE AGENT:** ☐ Process all Copies (1 thru 6). ☐ Detach Copy 5 for M.L.A. file. ☐ Send Copy 2 to Oklahoma Tax Commission. ☐ Return Copies 1, 3, 4 and 6, together with the appropriate title documents, to the Secured Party.

36438197

| DEBTOR NAMES AND ADDRESSES *(Last Name First)* | SECURED PARTY NAME AND ADDRESS | OKLAHOMA TAX COMMISSION USE ONLY |
|---|---|---|
| DONNA BYNUM<br><br>ROUTE 2 BOX 85<br>INOLA OK 74036 | EAST TULSA DODGE, INC.<br>4627 S MEMORIAL<br>TULSA, OK        74145 | **MOTOR LICENSE AGENT USE ONLY**<br>DATE L.E.F. RECEIVED    TIME RECEIVED<br>12-2-96       11:30   ☐ A.M. ☐ P.M. |

| THIS LIEN ENTRY FORM COVERS THE FOLLOWING VEHICLE | | RECEIPT NUMBER |
|---|---|---|
| DATE OF SECURITY AGREEMENT / ORIGINAL OKLAHOMA TITLE NO.<br>27 NOV 1996 | VEHICLE IDENTIFICATION NO. (V.I.N.)<br>1N4EB32A1FC728005 | 963377230A0345 |
| MODEL YEAR     MAKE AND MODEL<br>93        NISS SENT | BODY TYPE<br>4DR | MOTOR LICENSE AGENT *(Identification/Signature)*<br><br>JERRY CONREY 7230 |

**FOR SECURED PARTY USE · WHEN LIEN RELEASED ONLY**

DATE LIEN RELEASED _____ AUTHORIZED BY _____

☐ RELEASE MAILED TO OKLA. TAX COM. (Date) _____ BY: ☐ FIRST CLASS MAIL ☐ CERTIFIED MAIL

☐ RELEASE MAILED/DELIVERED TO DEBTOR ON _____ BY: ☐ FIRST CLASS MAIL ☐ CERTIFIED MAIL

ENCLOSURES ☐ PAID NOTE ☐ _____ ☐ DELIVERED IN PERSON

I have completed the above tasks: (SIGN) _____

**ASSIGNEE OF SECURED PARTY AND ADDRESS**
FIRST MERCHANT ACCEPT. CORP
3030 N W EXPRESSWAY STE 875
OKLA CITY, OK  73112

| ENCLOSURES | SECURED PARTY/ASSIGNEE SIGNATURES |
|---|---|
| ☐ CERTIFICATE OF TITLE<br>☐ APPLICATION FOR TITLE<br>☐ MANUFACTURER'S STATEMENT OF ORIGIN (M.S.O.)<br>☐ FEE | Date Executed<br>By: *Debbie Crone*   11/27/1996<br>*Representing Secured Party or Assignee* |

## LIEN ENTRY FORM — MOTOR VEHICLE — OKLAHOMA

COPY 1: SECURED PARTY MASTER FILE · M.L.A., PROCESSEN & RETURNS TO SECURED PARTY      *Form Approved by Oklahoma Tax Commission*

Account 02020261

**CREDIT APPLICATION**

☐ Fixed Value

*FAST N EASY DOBS*

**READ these directions BEFORE completing this Application**

If applying for individual credit in your own name and relying only on your own income or assets for repayment of the credit requested, complete Section B.
If applying for joint credit with another person, complete Sections B and C.
If applying for individual credit, but are relying on income from alimony, child support, separate maintenance or on the income or assets of another person as the basis for repayment of the credit requested, complete Section B and provide information in Section C about the other person.

**DEFENDANT'S EXHIBIT**

7

## SECTION A: VEHICLE

| | |
|---|---|
| MILEAGE 52995 | VEHICLE IDENTIFICATION NO. VN4EB55A11PC720005 |
| 93 Nissan Quest | |

| | |
|---|---|
| Cash Price | $ 6,100 |
| Cash Down $ | + Notals $ = |
| Trade-In Allowance | $ |
| Owing on Trade | $ |
| Net Trade-In | $ |
| Total Down Payment | $ |
| Unpaid Balance of Cash Price | $ |
| Total of Other Charges to be Financed | $ |
| Total Amount to be Financed for 48 mos. | $6,100 |

## SECTION B: APPLICANT

| | |
|---|---|
| APPLICANT NAME (LAST, FIRST, MIDDLE) Bynum, Donna S. | DATE OF BIRTH 3-5-52 |
| P.L 2 Box 85 HOME PHONE NO. (543-2143) | SOCIAL SECURITY NO. 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 |
| Chelsa Okla 74036 | J.W. Bynum |
| TIME AT RES 10y | OWNING/BUYING $125,000 RENTING $60,000 | 14900 E Marshall Tulsa |

| | |
|---|---|
| HAVE YOU EVER FILED BANKRUPTCY? ☐ YES ☑ NO IF YES, WHEN? | |

**EMPLOYMENT** Cherokee Indian Hospital    (1-392-6200)   Nurse R.N.
PREVIOUS EMPLOYER: St. Johns Hospital   OLDSC

Source of other income: alimony, child support or separate maintenance income need not be disclosed if you do not wish to have it considered as a basis for repaying this obligation.

## PRINCIPALS — (To be completed if a Corporation or Partnership)

## CREDIT REFERENCES — Include finance companies, banks, credit cards, charge accounts, suppliers. Indicate name(s) under which credit was obtained, if other than above.

| NAME OF CREDITOR / CREDIT CARD CO. | ADDRESS, BRANCH, PHONE OR CREDIT CARD NO. | OPEN | CLOSED | DATE OPEN | HIGH | TERM | PAYMENTS | BALANCE ($) |
|---|---|---|---|---|---|---|---|---|
| | | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | | | | | |

## SECTION C: JOINT APPLICANT OR OTHER PARTY

| | |
|---|---|
| HAVE YOU EVER FILED BANKRUPTCY? ☐ YES ☐ NO IF YES, WHEN? | |

## EMPLOYMENT:

Source of other income: alimony, child support or separate maintenance income need not be disclosed if you do not wish to have it considered as a basis for repaying this obligation.

## CREDIT REFERENCES — Include finance companies, banks, credit cards, charge accounts, suppliers. Indicate name(s) under which credit was obtained, if other than above.

| NAME OF CREDITOR / CREDIT CARD CO. | ADDRESS, BRANCH, PHONE OR CREDIT CARD NO. | OPEN | CLOSED | DATE OPEN | HIGH | TERM | PAYMENTS | BALANCE ($) |
|---|---|---|---|---|---|---|---|---|
| | | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | | | | | |
| | | ☐ | ☐ | | | | | |

CREDIT REPORT. A credit report may be obtained in connection with this application, for a renewal or extension of credit for which application was made. Upon request, I will be told if a credit report(s) was/were obtained, and given the name and address of the credit reporting agency(s) providing the report(s). CREDIT INVESTIGATION. I authorize the dealer/Chrysler Financial to start a credit investigation based on the information voluntarily provided by me which is true and correct, and reflects all my current debts. BANKRUPTCY. A bankruptcy proceeding is not in progress nor expected. BUSINESS APPLICATIONS. If the application is submitted in the name of a business, a current and prior year financial statement, including P&L statement, and balance sheet is required, audited if possible. COPY PROVIDED. Upon request, I will be provided a copy of this application.
In addition, I authorize that a copy of this application will be sent to the following financial institutions for credit investigation purposes:

| SIGNATURE OF APPLICANT | DATE | SIGNATURE OF JOINT APPLICANT / OTHER PARTY | DATE |
|---|---|---|---|
| X Donna Bynum | | X | |

**CHRYSLER FINANCIAL**

Fair Credit Reporting Act Disclosure: This application may be considered by Chrysler Financial Corporation and the dealer as to whether it meets purchase requirements.

DEFENDANT'S
EXHIBIT
8

## Affidavit of Debt

CYGNET - FMAC (original creditor) hereby makes the following statements:

- There is due and owing from DONNA BYNUM, which debtor's account number is 0317099, the principal amount of $ 2062.26 and accrued and unpaid interest as of 12/7/1999 pursuant to the terms and conditions of the account's agreement. Said agreement holds the debtor liable for reasonable attorney fees.

- Said account was, on 6/18/2003, assigned to Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES (buyer) with full power and authority to do and perform all acts necessary for the collection, settlement, adjustment, compromise or satisfaction of the said claim. Further, Affiant states that, to the best of Affiant's knowledge, information and belief, there were no uncredited payments, just counter claims or offsets against the said debt when sold. Further, the Affiant acknowledges that, in making this affidavit, Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES (buyer) is now the owner of said account, and that Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES (buyer) has complete authority to settle, adjust, compromise and satisfy the same and that CYGNET - FMAC (original creditor), has no further interest in said debt for any purpose.

- The original application has been lost, destroyed or is no longer available.

_____   (Affiant's signature)

Gregory Katz, Manager _____   (Affiant's printed name & title)
Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES as attorney in fact for CYGNET - FMAC, pursuant to a power of attorney dated 6/18/2003.


DATED: 3/19/2004

STATE OF   NEW YORK _____ __
COUNTY OF   WESTCHESTER _____

Personally appeared the above-named Affiant and made oath that he/she has read the above and knows the contents hereof; that the same is true of his personal knowledge.

Subscribed and sworn to before me
on 3/19/2004

_____
LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2006

# AFFIDAVIT OF CLAIM



STATE OF     NEW YORK   )
                           ) SS

COUNTY OF    WESTCHESTER )

RE: Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES as assignee of CYGNET - FMAC (original creditor).

vs.

## DONNA BYNUM

I, Gregory Katz, employee of Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES, being duly sworn on oath say:

- I am acting in the capacity of Department Manager for my employer Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES organized in Delaware and doing business under the laws of the state of New York. In performing recovery services for Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES. I am familiar with the manner and method by which Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES maintains the books and records of its accounts and its affiliates' accounts.

- That the annexed statement of account against DONNA BYNUM is just, true and correct according to our books and records, that the documents attached to the complaint are true and correct copies of the original and if called as a witness at trial, I can testify as to its contents.

- In the normal course of business, Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES maintains computerized account records for accountholders who have delinquent credit accounts. Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the above accountholder's credit account, and I make this declaration based upon information from that review, and If called as a witness, I could testify to the following based on that review.

- The balance due and owing to Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES by the accountholder(s) on the account as of the date hereof is 2062.26 (principal balance), plus interest at the rate of 5% plus cost and attorney fees where applicable and provided in the contractual agreement.

- That the Defendant, if an individual, is not believed to be an active member of any branch of the armed forces of the United States of America, which belief is based upon Plaintiff's personal knowledge, review of credit application and/or credit reports and documents.

- Upon information and belief, no Defendant is an infant, incompetent or in the military service.

Under oath, I am authorized to make this affidavit for Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES, and I am informed and believe the above statements are true and correct.

_____
Manager

Subscribed and sworn to before me
on 3/19/2004

_____
LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2006

**DEFENDANT'S EXHIBIT**

_10_

# REYNOLDS, RIDINGS, VOGT & MORGAN, P.L.L.C.

### ATTORNEYS AT LAW

JAMES W. VOGT
FRED S. MORGAN
LISA A. ROBERTSON
BENJAMIN H. HARRIS

2200 First National Center
120 N. Robinson
Oklahoma City, OK  73102

Telephone:  (405)  232-8131
Facsimile:  (405)  232-7911
E-Mail:  rrvm@rrvmlaw.com

NORMAN E. REYNOLDS
(1920-2001)
W. OTIS  RIDINGS
(1899-1970)

April 5, 2004

Donna Bynum
526 W. Denny
Catoosa OK 74015

Re:   Cavalry Portfolio Serv.
      Amount:  $2,138.81

Dear Ms. Bynum:

Please be advised that this law firm has been retained by Cavalry Portfolio Serv. to collect the outstanding balance due and owing as set forth above.  You are hereby notified to remit to this law firm the entire outstanding balance.

Unless you dispute the validity of this debt, or any portion thereof, within thirty days of receipt of this letter, we will assume that the debt is valid.  If you notify us in writing within the thirty day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and mail you a copy.  We will also provide you with the name and address of the original creditor, if different from the current creditor, upon your written request within the thirty day period.  This law firm is attempting to collect this debt for our client and any information obtained will be used for that purpose.  If you are unable to comply with the request to satisfy the entire balance due and owing at this time, it is imperative that you contact this office and make arrangements to voluntarily pay the outstanding balance.  This is a communication from a debt collector.

Your failure to either remit the balance or enter into satisfactory arrangements may result in legal action and/or continued collection efforts against you.  Thank you for your immediate attention to this matter.

Sincerely yours,

REYNOLDS, RIDINGS, VOGT & MORGAN

Benjamin H. Harris

BHH/cn
Enclosure
Our File No. 040558

DEFENDANT'S
EXHIBIT

_// _

IN THE DISTRICT COURT OF ROGERS COUNTY
STATE OF OKLAHOMA

CAVALRY PORTFOLIO SERVICES, LLC,      )
as assignee of CYGNET - FMAC,         )
                                      )
                    Plaintiff,        )
vs.                                   )      Case No.
                                      )
DONNA BYNUM, an individual,           )
                                      )
                    Defendant.        )

## PETITION

COMES NOW the plaintiff and for its cause of action against the defendant, alleges and
states:

1. On or about , the defendant entered into a contract for the purchase of an automobile, a
copy of which, showing the amount and all the terms and provisions thereon and any endorsements
thereon, is attached as Exhibit "A".

2. Defendant failed to pay such contract in accordance with the terms thereof, and the
collateral securing the contract was sold, and there remains due and owing a deficiency balance to
plaintiff in the sum of $2,062.26 as set forth on the attached Exhibit "B" with interest thereon at the
rate of 5% per annum from December 7, 1999 until paid and a reasonable attorney's fee.

WHEREFORE, plaintiff prays judgment against the defendant for the sum of $2,062.26 with
interest thereon at the rate of 5% per annum from December 7, 1999 until paid, for costs of this
action including a reasonable attorney's fee, and for all other relief the Court deems just and proper.

NOTICE

Unless you dispute the validity of this debt, or any portion thereof, within thirty days of
receipt of this notice, we will assume that the debt is valid.  If you notify us in writing within the

thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and mail you a copy.  We will also provide you with the name and address of the original creditor, if different from the current creditor, upon your written request within the thirty-day period. This law firm is attempting to collect this debt for our client and any information obtained will be used for that purpose.

REYNOLDS, RIDINGS, VOGT & MORGAN, P.L.L.C.

By:_____

Benjamin H. Harris, OBA #18724
Attorneys for Plaintiff
2200 First National Center
120 North Robinson
Oklahoma City, OK 73102
(405) 232-8131
(405) 232-7911 Facsimile

count 02020261

| BUYER(S) NAME & ADDRESS (Last Name First) | SELLER/SECURED PARTY |
|---|---|
| DONNA BYNUM<br>ROUTE 2 BOX 85<br>INOLA OK 74036 | EASY TULSA LODGE, INC.<br>4427 S. MEMORIAL<br>TULSA, OK          74145 |

NUMBER

DATE OF SALE   27 NOV 1996

The undersigned grants to Seller a security interest in the Collateral and payment of indebtedness evidenced by RETAIL INSTALLMENT CONTRACT executed herewith, and, except for collateral which is the secured principal dwelling or which is household goods as defined in 16 CFR sec. 444.1.(I), to secure (1) all future advances by Seller to buyer, (2) all other liabilities to Seller (primary/secondary/direct/indirect, absolute/contingent), now, heretofore, or hereafter existing by whichever to hereafter existing of any or acquired of Buyer, and (3) the performance of all agreements, covenants, and warranties of Buyer to Seller. Collateral consists of (1) all property specifically described herein, (2) all personal property installed in, or affixed to, such described property, including additions, accessions, and accessories, (3) proceeds, including insurance proceeds payable by reason of damage to or loss of Collateral, and (4) proceeds from credit life and disability insurance coverage, if obtained, and any rebates or refunds from such insurance coverage and from any extended service contract purchased by the undersigned pursuant to this Contract.

X _____

X _____

## DISCLOSURES

| 1. ANNUAL PERCENTAGE RATE<br>The cost of the credit as a yearly rate. | 2. FINANCE CHARGE<br>The dollar amount the credit will cost. | 3. AMOUNT FINANCED<br>The amount of credit provided to Buyer or on his behalf as itemized below. | 4. TOTAL OF PAYMENTS<br>(Add items 2 and 3)<br>The amount Buyer will have paid after Buyer has made all payments as scheduled. | 5. TOTAL SALES PRICE<br>(Add line 4 and box 4)<br>The total cost of the purchase on credit, including Buyer's down payment of $ 320.00 |
|---|---|---|---|---|
| 19.00 | 2691.24 | 6039.00 | 8730.24 | 9050.24 |

## PAYMENT SCHEDULE WILL BE:

| NUMBER OF REGULAR PAYMENTS | AMOUNT OF PAYMENTS | |
|---|---|---|
| | Regular | Plus a Final Payment |
| 48 | 181.88 | N/A |

| FREQUENCY OF PAYMENTS | First Payment | DUE DATE OF PAYMENTS | Final Payment |
|---|---|---|---|
| X Monthly | 11 JAN 1997 | OTHER PAYMENT DUE SAME DAY OF EACH PERIOD | 11 DEC 2000 |

Prepayment: If Buyer pays off early, Buyer will not have to pay a penalty.

See Retail Installment Sales Contract, Security Agreement and related contract documents for additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## SECURITY/COLLATERAL

Boxes checked apply to this transaction:

☒ The signers of the Security Agreement are giving a security interest in the following property:

93 NISS SENT
1N4EB32A1PC720805
4DR   GOLD

☐ Collateral securing other sales by Seller to Buyer also secures this contract.

☐ Assumption Policy: Someone buying Buyer's house:

  ☐ may, subject to certain conditions, be allowed to assume the remainder of the mortgage on the original terms.

  ☐ cannot assume the remainder of the mortgage.

Fees Paid in Cash by Buyer: Filing Fees $ ____N/A____   Non-Filing Insurance $ ____N/A____

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| 6349.00 | 1 CASH PRICE (Including accessories, Sales Tax, Service and Service Contracts) |
| 320.00 | 2 Cash Down Payment |
| N/A | 3 Trade-in ____N/A____ |
| N/A | 4 Payoff Balance on Trade-in Paid to ____ |
| N/A | 5 Net Allowance on Trade-in (Subtract line 4 from line 3) |
| 320.00 | 6 Total Down Payment (Add lines 2 and 5) |
| 6029.00 | 7 Unpaid Balance of Cash Price (Subtract line 6 from line 1) |

Amounts Paid to Others on Behalf of Buyer:

| | |
|---|---|
| N/A | 8   Credit Life Insurance Premium to ____ |
| N/A | 9   Disability Insurance Premium to ____ |
| N/A | 10  Property Insurance Premium to ____ |
| 10.00 | 11  Filing and Releasing Fees to Public Officials |
| N/A | 12  License, Title and Registration to ____ VSI ____ |
| N/A | 13  To ____ |
| 10.00 | 14 Total Amount Paid to Others on Behalf of Buyer (Add lines 8 thru 13) |
| N/A | 15 Less - Prepaid Finance Charge |
| 6039.00 | 16 Amount Financed (Add lines 7 and 14 and subtract line 15) |

This contract arises from a consumer credit sale of a used vehicle (as defined in Part 455 of Title 16 of the Code of Federal Regulations) then the information you see on this window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

## DISCLAIMER OF WARRANTIES

Seller's salesmen may have made oral statements about the chandise described in this contract. Such statements do not stitute warranties, shall not be relied on by the Buyer, and are not of the contract for sale. The entire contract is embodied in this ing. This writing constitutes the final expression of the parties ement, and it is a complete and exclusive statement of the terms of agreement. The parties agree that the implied warranties of RCHANTABILITY and fitness for a particular purpose and all w warranties, express or implied, are EXCLUDED from this section and shall not apply to the goods sold.

(c) '93 0977 5 Simple Interest

## INSURANCE STATEMENT

CREDIT LIFE AND DISABILITY INSURANCE are not required to obtain this sale. Such insurance for unpaid interest and principal of loan and for term of loan will only be provided if available and if Buyer requests Seller to obtain such insurance by indicating insurance desired and signing below.

| | | | |
|---|---|---|---|
| ☐ Life Insurance on | ☐ Buyer | ☐ Co-Buyer | |
| Cost for One Person ____ | | $ | N/A |
| Cost for Two Persons ____ | | $ | N/A |
| ☐ Disability Insurance on | ☐ Buyer | ☐ Co-Buyer | |
| Cost for One Person ____ | | $ | N/A |

PROPERTY AND VENDOR'S SINGLE INTEREST INSURANCE may be obtained by Buyer through any person of his choice. If obtained through Seller, the cost for term of contract will be:

| | | |
|---|---|---|
| ☐ Property Insurance ____ | $ | N/A |
| ☐ Vendor's Single Interest Insurance ____ | $ | N/A |

(The lesser lending this policy waives its right to subrogation against Buyer)

☐ Buyer desires the insurance checked above.

☐ Buyer does not desire insurance.

X _____   Date 11-27-96

X _____   Date

## NOTICE OF ASSIGNMENT

DATE

Dear Customer:

We have purchased this Retail Installment Sales Contract between you and the Seller named above.

We have taken assignment of the rights under the contract and other documents of this transaction, including all rights to payment, therefore, all payments should be made directly to our office.

We welcome you as a customer, and should you have any question concerning this contract or any of our other financial services, please contact us at Creditor/Assignee address shown below.

Sincerely,

Representing Creditor/Assignee

Enclosures: ☐ Coupon Book ☐ ____

## BUYER(S) SIGNATURES

I/We agree to terms of this Retail Installment Sales Contract, the Agreement, Disclosure Statement and Payment Schedule, Additional Provisions printed on reverse side hereof. I/We received a completed copy of this form and Date of Sale indicated applicable, the window form is attached and is complete and ____

X _____

X _____

EXHIBIT

## CREDITOR/ASSIGNEE

FIRST MERCHANT ACCEPTANCE CORP
3030 N W EXPRESSWAY STE 875
OKLA CITY, OK  73112

ADDITIONAL PROVISIONS ON REVERSE SIDE

(c) Copyright 11/93 Ameri

ASSIGNEE

## ADDITIONAL PROVISIONS

*BUYER EXPRESSLY WARRANTS, COVENANTS AND AGREES:*

### WARRANTIES AND COVENANTS

**1. Financial Information.** All applications, balance sheets, earnings statements, other financial information and other representations which have been, or may hereafter be, furnished Seller/Secured Party to induce it to make into or continue a financial transaction with Buyer fairly represent the financial condition of Buyer and the demand for the period above therein, and all other information, reports, documents, papers and data furnished by Seller/Secured Party are or shall be, at the time furnished, accurate and correct in all material respects and complete insofar as completeness may be necessary to give Seller/Secured Party a true and accurate knowledge of the subject matter. There has been no material change in the financial condition of Buyer since the effective date of the last furnished financial information which has not been reported to Seller/Secured Party in writing.

**2. Ownership Free of Encumbrances.** Buyer will pay or satisfy any lien and or security interests other than the Seller/Secured Party's security interest to attach to any of the Collateral, will not permit the Collateral to be levied upon, garnished or attached under any legal process, or permit any other thing to be done that may impair the value of the Collateral or the security interest attached hereby.

**3. Financing Statement.** Buyer agrees to sign with Seller/Secured Party in executing one or more Financing Statements from time to time, in order to perfect, or to continue perfection of, the security interest herein granted. A certain execution of other repositories of this Agreement or of any Financing Statement is sufficient as a Financing Statement.

**4. Residence, Use and Location.** Statements made herein or otherwise as to Buyer's address and as to location, possession and use of the Collateral are true. Buyer agrees to immediately notify Seller/Secured Party in writing of any proposed change in Buyer's address and to provide such notification prior to the proposed effective date thereof. Buyer will not permit any of the Collateral to be removed from the location specified herein without the written consent of Seller/Secured Party.

**5. Sale, Lease or Disposition of Collateral Prohibited.** Buyer shall not sell, transfer, exchange, lease or otherwise dispose of the Collateral or any part thereof or the Buyer's rights therein without first obtaining the prior written consent of Seller/Secured Party. This consent of Seller/Secured Party may be conditioned upon such requirements (including, but not limited to, the application of proceeds to obligations secured hereby) which requirements Seller/Secured Party deems to be for the protection of its security interest; and, it is understood and agreed that such consent will not be deemed to be effective unless and until such requirements and conditions have been fulfilled.

**6. Maintenance and Inspection.** Buyer at own expense shall keep the Collateral in good condition and repair, and shall not permit it to be misused or abused or waste or allowed to deteriorate except for the ordinary wear and tear of its intended primary use, shall prudently protect the Collateral from the elements, shall use the Collateral carefully and not permit its illegal use or its use in a manner not permitted by the written instruments now or, and shall permit and facilitate Seller/Secured Party to examine and inspect the Collateral at any time and wherever located.

**7. Taxes.** Buyer shall promptly pay any and all taxes, assessments and license fees with respect to the Collateral or the use of the Collateral.

**8. Affixing to Real or Personal Property Prohibited.** Buyer shall not permit any of the Collateral to become an accession or affixed to other personal property or to become attached or affixed to real property without first obtaining any written consent of Seller/Secured Party. The consent of Seller/Secured Party may be conditioned upon any requirements (including, but not limited to, the subrogation of other interest senior in all to such other personal or real property) to the rights and interest of Seller/Secured Party which requirements Seller/Secured Party deems to be for the protection of its security interest; and, it is understood and agreed that such consent will not be deemed to be effective until such conditions and requirements have been fulfilled.

**9. Adequate Insurance.** Buyer at own expense shall insure Collateral with companies acceptable to Seller/Secured Party against such risks and in such amounts as Seller/Secured Party shall require and designate Seller/Secured Party or Seller/Secured Party shall require. All insurance policies shall be written for benefit of Buyer and Seller/Secured Party as their interests appear and such policies or certified copies thereof evidencing same shall be furnished to Seller/Secured Party within ten days of date of this Agreement. All policies of insurance shall provide for at least ten days prior written notice of cancellation to Seller/Secured Party. Seller/Secured Party may act as attorney for Buyer in the procuring of insurance, in making, adjusting, and settling claims under or cancelling said insurance and in endorsing Buyer's name on any drafts or checks drawn by insurers of Collateral.

**10. Expenditures of Seller/Secured Party.** At its option and after any written notice to Buyer required by law, which notice Buyer and Seller/Secured Party hereby agree is sufficient if mailed, postage prepaid, to the address of Buyer provided for herein at least ten days before the disposition of the Collateral herein, therein, if is agreed Seller/Secured Party may discharge taxes, liens, security interests or other encumbrances on the Collateral and may pay for the repair of any damage to the Collateral, for the maintenance and preservation thereof, and for insurance thereon. Buyer shall be liable for and agrees to pay Seller/Secured Party for all expenditures of Seller/Secured Party for taxes on the Collateral, for the discharge of liens, security interest or other encumbrances on the Collateral, for the repair of any damage to the Collateral, and for all risks, attorney's fees and other disbursements of Seller/Secured Party in connection with the foregoing. Buyer agrees promptly to reimburse Seller/Secured Party for all such expenditures and will seek reimbursement by the amounts of such expenditures shall be considered a liability of Buyer to Seller/Secured Party when it is secured by this Security Agreement and shall be evident as a FINANCE CHARGE at a rate not exceeding the ANNUAL PERCENTAGE RATE provided herein. In addition, Buyer shall be liable for and agrees to pay Seller/Secured Party for all costs, attorney fees and other disbursements of Seller/Secured Party as allowed by law or provided for herein in the enforcement or collection of any note, security, or liability of Buyer to Seller/Secured Party, or in the realization upon or the enforcement or collection of any amount recoverable, contract right, promissory note, chattel paper, instrument, document or other Collateral in which Seller/Secured Party has a security interest herein. Buyer agrees promptly to reimburse Seller/Secured Party for all such expenditures and until such reimbursement the amount of such expenditures shall be considered a liability of Buyer to Seller/Secured Party which is secured by this Security Agreement.

### EVENTS OF DEFAULT

Buyer shall be in default under this Agreement upon the happening of any one or more of the following events or conditions, herein called "Events of Default":

**1.** Any warranty, covenant, agreement, representation, financial information or statement made or furnished to Seller/Secured Party by or on behalf of Buyer to induce Seller/Secured Party to enter into this Agreement, or in conjunction therewith, is violated or proves to have been false in any material respect when made or furnished.

**2.** Any payment required hereunder or under any other note or obligation of Buyer to Seller/Secured Party or to others is not made when due or in accordance with terms of the applicable contract.

**3.** Buyer defaults in the performance of any covenant, obligation, warranty, or provision contained in any Loan Agreement or in any other note or obligation of Buyer to Seller/Secured Party or to others.

**4.** The occurrence of any event or condition which results in acceleration of the maturity of any obligation of Buyer to Seller/Secured Party or to others under any note, indenture, agreement, or undertaking.

**5.** The making of any levy against or seizure, garnishment or attachment of any Collateral, the constructive commitment thereof by Buyer, or the sale, lease or other disposition of Collateral by Buyer without the prior written consent of Seller/Secured Party as required elsewhere in this Agreement.

**6.** Loss, theft, substantial damage or destruction of Collateral.

**7.** When in the judgment of Seller/Secured Party, the Collateral becomes unsatisfactory or insufficient in character or value, and upon request Buyer fails to provide additional Collateral as required by Seller/Secured Party.

**8.** Any time Seller/Secured Party in its sole discretion believes the prospect of payment or of performance of any liability, covenant, warranty or obligation secured hereby is impaired.

**9.** The death, dissolution, termination of existence or insolvency of Buyer, the appointment of a receiver over any part of Buyer's property or any part of the Collateral, an assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency law by or against Buyer or any guarantor or surety for Buyer.

### REMEDIES

Upon the occurrence of an Event of Default, and at any time thereafter, Seller/Secured Party may, at its option and without notice or demand to Buyer except as otherwise provided by law, exercise any and all rights and remedies provided by the Uniform Commercial Code of the state in which Seller/Secured Party is located, and all other rights and remedies possessed by Seller/Secured Party, including but not limited to:

**1.** Declare all liabilities secured hereby immediately due and payable, and/or proceed to enforce payment and performance of all liabilities secured hereby, provided that, upon any prepayment in full of the unpaid balance of such liabilities, the Buyer shall be entitled to a rebate of any unearned portion of any finance or other charge in accordance with law.

**2.** Require Buyer to assemble Collateral or evidence thereof and make it available to Seller/Secured Party at a place designated by Seller/Secured Party which is reasonably convenient to both parties.

**3.** Repossess the Collateral, and for this purpose Seller/Secured Party is hereby granted authority to enter into and upon any premises on which the Collateral or any part may be situated, and to remove it.

**4.** Possess all books and records while relating to or pertaining to the Collateral, and for this purpose Seller/Secured Party is hereby given authority to enter into and upon any premises on which such books and records or any part of them may be situated, and to remove them.

**5.** Transfer any of the Collateral or evidence thereof into its own name or that of a nominee and receive the proceeds therefrom and hold the same as security for the liabilities of Buyer to Seller/Secured Party or apply it on or against such liability.

Seller/Secured Party may also demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize upon Collateral, in its own name or in the name of Buyer as Seller/Secured Party may determine.

**6.** Sell or otherwise dispose of the Collateral. Unless Collateral is in whole or part is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller/Secured Party shall give reasonable notice of the time and place of any public sale, or of the time after which any private sale or other disposition is to be made. Any requirement of notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer provided for herein at least ten days before any sale or other disposition or action. Seller/Secured Party shall be entitled to buy Collateral at any public sale and, if the Collateral is of type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, including without limitation, court costs, fees for repletin bonds, storage, transportation costs, resale and preparation costs for sale, selling costs, and reasonable attorney fees as set forth in the RETAIL INSTALLMENT SALES CONTRACT. All sums may be secured by the security interest in the Collateral granted hereby.

**7.** Seller/Secured Party shall not be liable for the failure to collect any account, enforce any contract right, or for any other act or omission on the part of Seller/Secured Party, its officers, agents or employees, except as the same constitutes a lack of good faith or failure to act in a commercially reasonable manner. Seller/Secured Party shall have acted in a commercially reasonable manner if its actions or non-action is consistent with general banking usage in the area of Seller/Secured Party's location, but this standard shall not constitute disapproval of any procedures which may be otherwise reasonable under the circumstances nor require Seller/Secured Party to take necessary steps to preserve rights against prior parties in an instrument or chattel paper.

### GENERAL

**1.** Waivers. No act, delay, or omission, including Seller/Secured Party's waiver of remedy because of any default hereunder, shall constitute a waiver of any of Seller/Secured Party's rights and remedies under this Agreement or any other agreement between the parties. All rights and remedies of Seller/Secured Party are cumulative and may be exercised singularly or concurrently, and the exercise of any one or more remedy hereby without the waiver of any other. No waiver, change, modification, or discharge of any of Seller/Secured Party's rights or Buyer's duties as specified or allowed will be effective unless in writing and signed by a duly authorized officer of Seller/Secured Party; and, any such waiver will not be a bar to the exercise of any right or remedy on any subsequent default.

**2.** Agreement Binding on Assigns. This Agreement shall inure to the benefit of the successors and assigns of Seller/Secured Party and shall be binding upon the heirs, executors, administrators, successors and assigns of Buyer.

**3.** Rights of Seller/Secured Party Assignable. Seller/Secured Party at any time and at its option may pledge, transfer or assign its rights under this Agreement in whole or in part, and any transferee or assign shall have all the rights of Seller/Secured Party as to the rights or parts thereof so pledged, transferred, or assigned. Buyer's rights hereunder may not be assigned.

**4.** Joint and Several Responsibility of Buyer. If more than one Buyer executes this Agreement, their responsibility hereunder shall be joint and several and the references to Buyer herein shall be deemed to refer to each Buyer.

**5.** Separability of Provisions. If any provision of this Agreement shall for any reason be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid or unenforceable provisions had never been contained herein.

**6.** This Agreement shall be construed in accordance with the law of the state of location of the office of Seller/Secured Party shown on the reverse hereof.

### ASSIGNMENT BY SELLER AND TERMS

FOR VALUE RECEIVED, Seller hereby sells, assigns, and transfers all of its right, title, and interest in and to this Contract and the property described therein, to the Assignee shown on the reverse side hereof (herein called "Assignee"), its successors and assigns with power to take legal proceedings in the name of the Seller or Assignee. Seller warrants that said extension and credit complies with all Federal and State laws applicable to that transaction, that Seller has taken all steps necessary to perfect the lien created and that it has been properly and legally perfected under this Agreement or indirectly or in any way related to the arising from all of the terms and conditions whatsoever, except that within Contract; that the Buyer had legal capacity to enter this Contract at the time of its execution and that there is now owing on this without limit the amount as set forth therein.

Seller agrees to repurchase this Contract upon the Assignee's demand in the event the Buyer asserts any claim or defense against Seller relating to the performance of Seller or Seller's creation of any provision of applicable Federal or State law relating to consumer credit, or in the event Assignee becomes aware of any such performance, non-performance, or violation by Seller which might give rise to the assertion of any such claim or defense, or in the event that any of Seller's warranties set out herein are or become false in any respect. In addition, this Assignment is subject to the provision set out below in the paragraph(s) initialed by Assignor, if any.

INITIALS ____

__ REPURCHASE - Seller guarantees the payment and performance of this Contract, except as otherwise provided in the Repurchase Agreement between the Seller and Assignee.

INITIALS ____

__ GUARANTY. Seller guarantees the payment and performance of this Contract.

INITIALS ____

☑ WITHOUT RECOURSE. This Assignment is without recourse against the Assignor.

INITIALS ____

__ FULL RECOURSE. Seller guarantees payment of all amounts due on this contract as and when such payments become due. Seller waives any extension of time made by Assignee and agrees to repurchase this Contract at any time upon demand after any default by the Buyer.

SELLER __ EAST TULSA DODGE, INC.__   BY _____   President   DATE 4/22/96

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## Affidavit of Debt

CYGNET - FMAC (original creditor) hereby makes the following statements:

- There is due and owing from DONNA BYNUM, which debtor's account number is 0317099, the principal amount of $ 2062.26 and accrued and unpaid interest as of 12/7/1999 pursuant to the terms and conditions of the account's agreement. Said agreement holds the debtor liable for reasonable attorney fees.

- Said account was, on 6/18/2003, assigned to Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES (buyer) with full power and authority to do and perform all acts necessary for the collection, settlement, adjustment, compromise or satisfaction of the said claim. Further, Affiant states that, to the best of Affiant's knowledge, information and belief, there were no uncredited payments, just counter claims or offsets against the said debt when sold. Further, the Affiant acknowledges that, in making this affidavit, Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES (buyer) is now the owner of said account, and that Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES (buyer) has complete authority to settle, adjust, compromise and satisfy the same and that CYGNET - FMAC (original creditor), has no further interest in said debt for any purpose.

- The original application has been lost, destroyed or is no longer available.

_____ (Affiant's signature)

Gregory Kutz, Manager _____ (Affiant's printed name & title)
Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES as attorney in fact for CYGNET - FMAC, pursuant to a power of attorney dated 6/18/2003.


DATED:  3/19/2004

STATE OF   NEW YORK
COUNTY OF  WESTCHESTER

Personally appeared the above-named Affiant and made oath that he/she has read the above and knows the contents hereof; that the same is true of his personal knowledge.

Subscribed and sworn to before me
on 3/19/2004

_____
LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2006

**EXHIBIT** _B_

# AFFIDAVIT OF CLAIM

STATE OF      NEW YORK    )
                              ) SS
COUNTY OF    WESTCHESTER )

RE: Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES as assignee of
CYGNET - FMAC (original creditor).

vs.

DONNA BYNUM

I, Gregory Katz, employee of Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO
SERVICES, being duly sworn on oath say:

- I am acting in the capacity of Department Manager for my employer Cavalry Portfolio Services, LLC as assignee of
CAVALRY PORTFOLIO SERVICES organized in Delaware and doing business under the laws of the state of New York.
In performing recovery services for Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES.
I am familiar with the manner and method by which Cavalry Portfolio Services, LLC as assignee of CAVALRY
PORTFOLIO SERVICES maintains the books and records of its accounts and its affiliates' accounts.

- That the annexed statement of account against DONNA BYNUM is just, true and correct according to our books and
records, that the documents attached to the complaint are true and correct copies of the original and if called as a witness at
trial, I can testify as to its contents.

- In the normal course of business, Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES
maintains computerized account records for accountholders who have delinquent credit accounts.  Cavalry Portfolio
Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES maintains such records in the ordinary and routine
course of business and is charged with the duty to accurately record any business act, condition or event onto the computer
record maintained for the accounts, with the entries made at or very near the time of any such occurrence.  I have reviewed
the applicable computer record as it relates to the above accountholder's credit account, and I make this declaration based
upon information from that review, and If called as a witness, I could testify to the following based on that review.

- The balance due and owing to Cavalry Portfolio Services, LLC as assignee of CAVALRY PORTFOLIO SERVICES by
the accountholder(s) on the account as of the date hereof is 2062.26 (principal balance), plus interest at the rate of 5% plus
cost and attorney fees where applicable and provided in the contractual agreement.

- That the Defendant, if an individual, is not believed to be an active member of any branch of the armed forces of the
United States of America, which belief is based upon Plaintiff's personal knowledge, review of credit application and/or
credit reports and documents.

- Upon information and belief, no Defendant is an infant, incompetent or in the military service.

Under oath, I am authorized to make this affidavit for Cavalry Portfolio Services, LLC as assignee of
CAVALRY PORTFOLIO SERVICES, and I am informed and believe the above statements are true and
correct.

_____
Manager

Subscribed and sworn to before me
on 3/19/2004

_____
LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2006

**DEFENDANT'S EXHIBIT**

_12_

**Benjamin H. Harris**

| | |
|---|---|
| **From:** | "Michelle Stallings" <michelle@rrvmlaw.com> |
| **To:** | "Ben Harris" <benharris@rrvmlaw.com> |
| **Sent:** | Thursday, May 27, 2004 10:07 AM |
| **Subject:** | Fw: BKCY INFO, DISCHARGES. |

----- Original Message -----
From: "Elliott Threadgill" <ethreadg@Cavps.com>
To: <michelle@rrvmlaw.com>
Sent: Thursday, May 27, 2004 7:58 AM
Subject: BKCY INFO, DISCHARGES.

*Nor middle*

CHRISTY MICHELLE CORBITT SS#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 WAS DISCHARGED FROM CHAPTER 7 BKCY ON 5/15/01 CASE#0110338.

DONNA S BYNUM SS#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 WAS DISCHARGED FROM CHAPTER 7 BKCY ON 2/27/01 CASE#0004535.

*please find*

THANK YOU,
Elliott Threadgill
Cavalry Portfolio Services
(914)347-3440 ext 1460.
fax #914-347-0328

5/27/2004

**DEFENDANT'S EXHIBIT**

13

TERRY LEE SARTIN
P.O. BOX 1674
CLAREMORE. OKLAHOMA 74018
918-341-3769

JUN 18 2004

PROCESS SERVICE INVOICE

TO: Reynolds, Ridings, Vogh & Morgan        DATE 6-10-04
- Benjamin Harris
3200 First National Center
120 N. Robinson
Oklahoma City, OK 73102

| Case # | Client oel Person Served | (Date Served) | |
|---|---|---|---|
| CS-2004-224 | Cavaley PortFolio/CYGNET | | N/c |
| - Returned | To Donna Bynum - do not serve | | |
| CS-2004-198 | Cavaley Portfolio/Cynet | | N/c |
| | To Mahona K Gwin - Not Found | | |
| CS-2003-276 | Cavaley Portfolio/ | | N/c |
| | To Kenneth & Michelle Hamby - Not Found | | |
| CS-2004-183 | Linda Roberts | (5-19-04) | 50.00 |
| CS-2004-197 | Constance Traylor | (5-19-04 | 50.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | EXPENSES | |
| | | TOTAL: | 100.00 |

THANK YOU
WE APPRECIATE YOUR BUSINESS

DEFENDANT'S
EXHIBIT
14

IN THE DISTRICT COURT OF ROGERS COUNTY
STATE OF OKLAHOMA

FILED IN THE DISTRICT COURT
ROGERS COUNTY OKLAHOMA

JUN 10 04

CANDI CZAPANSKY, COURT CLERK

_____ DEPUTY

| | | |
|---|---|---|
| CAVALRY PORTFOLIO SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. CS-2004-224 |
| | ) | |
| DONNA BYNUM, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

## DISMISSAL WITH PREJUDICE

COMES NOW the plaintiff and dismisses the above styled cause of action against the

defendant, DONNA BYNUM, an individual,. , with prejudice to refiling same.

REYNOLDS, RIDINGS, VOGT & MORGAN, P.L.L.C.

By:_____
    Benjamin H. Harris, OBA #18724
    Attorneys for Plaintiff
    2200 First National Center
    120 North Robinson
    Oklahoma City, OK 73102
    (405) 232-8131

## CERTIFICATE OF MAILING

I hereby certify that on the ___8___ day of ___June___, 2004, I mailed a true and correct
copy of the above and foregoing with proper postage affixed thereto, to:

        Donna Bynum
        526 W. Denny
        Catoosa OK 74015

        _____
        Benjamin H. Harris

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DONNA BYNUM,                          )
                                      )
            Plaintiff,                )
                                      )
                                      )      Case No.: 04-CV-515EA(C)
v.                                    )
                                      )
CAVALRY PORTFOLIO SERVICES, LLC.,     )
as assignee by CYGNET-FMAC,           )
CAVALRY SPVI, L.L.C., REYNOLDS,       )
RIDINGS, VOGT and MORGAN, and         )
BENJAMIN HARRIS,                      )
                                      )
            Defendants.               )

## AFFIDAVIT OF CAVALRY PORFOLIO SERVICES, INC.

STATE OF NEW YORK          )
                           )
COUNTY OF WESTCHESTER      )

Gino Archer, being first duly sworn, states as follows:

1.  I am of legal age and have personal knowledge of the facts set forth hereinafter.

2.  I am the Managing Director of Cavalry Portfolio Services and have personal knowledge of the policies and procedures of Cavalry related to bankruptcies of account debtors.

3.  Cavalry maintains a system to determine whether any of its account debtors have filed bankruptcy. This system includes using an independent third party, Banko / Lexus Nexus, to check account debtors by name and social security number. This system checks for bankruptcy filings on a daily basis.

4.  Cavalry does not send accounts to lawyers it employs where it has knowledge that the account debtor has a pending bankruptcy, or has been discharged in a bankruptcy.

5.  Cavalry has procedures in place to identify debtors who have filed bankruptcy. Accounts

are subjected to an initial and subsequent periodic Banko screenings on a regular basis. Cavalry has a separate department whose function is to ensure compliance with these procedures and to handle cases if bankruptcy is identified.

6.    According to Banko's website (http://www.banko.com/about.cfm) "Banko's national bankruptcy database contains complete information on all bankruptcy filings, discharges, dismissals and conversions in the United States. Banko® gathers complete bankruptcy information from all Federal Bankruptcy Districts on a daily basis. This information is then imported into one, easy-to-use bankruptcy database, saving you time and bankruptcy court on-line fees. The Banko® database has up-to-date information on all bankruptcy filings, discharges, dismissals and conversions nationwide. Each bankruptcy filed is tracked on a case-by-case basis in order to collect all filings, 341 dates, discharges, dismissals and conversions. Bankruptcy information is collected from all 50 states, plus the District of Columbia, Puerto Rico and the U.S. Virgin Islands. This database contains historical data from 1992 to current."

Further affiant sayeth not.

_____
Gino Archer

Subscribed and sworn to before me this 21st day of JANUARY, 2005.

Notary Public _____

(Seal)

My Commission Expires:_____

Louis Dardignes
Notary Public, State of New York
No. 01DA5057360
Qualified in Rockland County
Commission Expires March 25, 20__

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DONNA BYNUM,                                )
                                            )
                 Plaintiff,                 )
                                            )
v.                                          )        Case No.: 04-CV-515EA(C)
                                            )
CAVALRY PORTFOLIO SERVICES, LLC.,           )
as assignee by CYGNET-FMAC,                 )
CAVALRY SPVI, L.L.C., REYNOLDS,             )
RIDINGS, VOGT and MORGAN, and               )
BENJAMIN HARRIS,                            )
                                            )
                 Defendants.                )

## AFFIDAVIT OF FRED MORGAN

STATE OF OKLAHOMA     )
                      )
COUNTY OF OKLAHOMA )

Fred Morgan, being first duly sworn, states as follows:

1.   I am of legal age and have personal knowledge of the facts set forth hereinafter.

2.   I am a partner of Reynolds, Ridings, Vogt & Morgan, PLLC (RRVM).  I was licensed to practice law in Oklahoma in 1980 and have practiced with RRVM and its predecessors since I was admitted to the practice of law.

3.   RRVM has three full time lawyers and one part time lawyer.  A substantial portion of the firm's work involves representation of creditors in commercial collection, commercial litigation and bankruptcy matters.  Approximately one-third or less of the firm's work involves representation of creditors on consumer claims.

4.   Two partners of the firm are members of The Commercial Law League of America, a national organization comprised of approximately five thousand members, most of which are lawyers whose practice involves the representation of creditors.  The Commercial Law League conducts

numerous meetings each year and publishes a quarterly publication. Articles published in the publication and seminars at meetings include presentations on the Fair Debt Collection Practices Act. Partners and associates of the firm review these articles and attend meetings of the CLLA. One of the partners is board certified by the American Board of Certification in the areas of creditor's rights and business bankruptcy. The American Board of Certification was formed by the American Bankruptcy Institute and the Commercial Law League of America.

5.   Partners and associates of RRVM attend seminars sponsored by the Oklahoma Bar Association and other organizations wherein the FDCPA is discussed. Partners and associates keep up to date on new cases discussing the FDCPA or legislation involving FDCPA.

6.   Cavalry Portfolio Services is a client of RRVM for which RRVM has performed legal work for several years. No partners or associates of RRVM own any interest in Cavalry.

7.   RRVM has an understanding and agreement with Cavalry that Cavalry will not send accounts to RRVM if the debtor has filed bankruptcy. Upon information and belief, Cavalry has policies and procedures in place which check for bankruptcy filings by its account debtors on a consistent basis. RRVM routinely receives notice from Cavalry of bankruptcy filings by debtors of Cavalry.

8.   RRVM currently has approximately one thousand four hundred open files from Cavalry Portfolio Services. RRVM has on occasion received notice from Cavalry that a debtor on whom a claim has been sent to RRVM has filed bankruptcy. While no statistical record is kept on the number of accounts involving claims received by RRVM from Cavalry wherein the debtor has already filed bankruptcy, affiant is aware of only two such accounts as reflected on the attached exhibit and affiant would estimate that if there are others, such claims would total less than one percent of the claims received from Cavalry.

9.   RRVM has policies and procedures in place to comply with the provisions of the FDCPA. No

correspondence is mailed from the firm without being first reviewed and then signed by a lawyer. All court documents are reviewed and signed by lawyers before being filed. All new files received from a client are reviewed by an attorney to determine whether sufficient evidence exists to justify sending an initial demand letter to the debtor and prior to filing a lawsuit. Personnel who handle collection files and make contact with the debtor are supervised by lawyers, advised of the requirements of the FDCPA and continually updated on any new developments related to the FDCPA. Lawyers continually review any form letters to remain in compliance with the FDCPA requirements. Personnel are advised to communicate to the assigned lawyer any notice of bankruptcy related to any debtor and to cease collection activity when a notice of bankruptcy is received.

Further affiant sayeth not.

Fred Morgan, OBA #6387

Subscribed and sworn to before me this ____ day of _____ 2005.

_____
Notary Public

(Seal)

My Commission Expires:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DONNA BYNUM, )
)
          Plaintiff, )
)
v. )      Case No.: 04-CV-515EA(C)
)
CAVALRY PORTFOLIO SERVICES, LLC., )
as assignee by CYGNET-FMAC, )
CAVALRY SPVI, L.L.C., REYNOLDS, )
RIDINGS, VOGT and MORGAN, and )
BENJAMIN HARRIS, )
)
          Defendants. )

## AFFIDAVIT OF BENJAMIN HARRIS

STATE OF OKLAHOMA   )
)
COUNTY OF OKLAHOMA )

Benjamin Harris, being first duly sworn, states as follows:

1.    I am of legal age and have personal knowledge of the facts set forth hereinafter.

2.    I was admitted to the practice of law in Oklahoma in 2000.

3.    I am an associate at the firm of Reynolds, Ridings, Vogt & Morgan.  I am familiar with the policies and procedures of RRVM as they relate to the FDCPA.

4.    I was assigned the file of Cavalry Portfolio Services relating to Donna Bynum with the documents received from Cavalry Portfolio Services with this account. (Exhibits1-9)

5.    I signed and directed the mailing of the letter to Donna Bynum which is attached as Exhibit 10.  I did not receive a response to the letter and upon information and belief no one at RRVM received a response to this letter.

6.     I drafted, signed and directed the filing of the Petition in Rogers County which is attached as Exhibit 11.  On May 27th, 2004, I received an e-mail from Cavalry Portfolio Services advising that Donna Bynum had previously filed bankruptcy. See the attached Exhibit 12.

7.     Upon receiving the e-mail I contacted the process server to whom the Petition and Summons had been delivered and instructed him to return it to my office if Donna Bynum had not been served.  The attached exhibit is the return from the process server advising that Donna Dynum was never served.  (Exhibit 13)

8.     I drafted, signed and directed the filing of the Dismissal With Prejudice which is attached as Exhibit 14.

9.     I have never talked to Donna Bynum, nor, based upon information and belief, do I believe that anyone else with RRVM has talked to Donna Bynum.

Further affiant sayeth not.

_____
Benjamin H. Harris, OBA #18724


Subscribed and sworn to before me this ___ day of _____, 2005.

_____
Notary Public


(Seal)

My Commission Expires:_____