UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Donna Bynum,<br>                Plaintiff,<br><br>vs.<br><br>Cavalry Portfolio Services, L.L.C.,<br>As assigned to Cygnet-FMAC,<br>Cavalry SPVI, L.L.C., Reynolds, Riding,<br>Vogt and Morgan, and Benjamin Harris,<br><br>                Defendants. | )<br>)<br>)<br>)   Case No. 04- 515EA(C)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MOTION IN LIMINE

    Plaintiff, Donna Bynum, respectfully requests the Court to limit and restrict the Defendants, Cavalry Portfolio Services, L.L.C. As assigned to Cygnet-FMAC, Cavalry SPVI, L.L.C., Reynolds, Riding, Vogt and Morgan, and Benjamin Harris, from introducing certain evidence at time of trial in this action.  Counsels for the parties participated in a conference call by agreement as to the discussion of the Plaintiff's Motion in Limine.  No issues were resolved at that time.

Extraneous Issues

    Intimations as to Plaintiff's character, and inflammatory or prejudicial arguments are typical in FDCPA cases , even though the only issue is whether Defendant violated the Act by its form letters.  Direct or implied attacks on the Plaintiff are improper. FED. R. Evid. 401, 403, 404.

Deadbeat Argument.

"One of the most frequent fallacies concerning debt collection legislation is the contention that the primary beneficiaries are deadbeats." S.Rep.No. 382, 95th Cong. 1st Sess. 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697. Despite the congressional finding, this defense counsel typically begins his/her memoranda by claiming that, by bringing an FDCPA action, Plaintiff seeks to immunize himself from the collection process and the natural, legitimate consequences of nonpayment of debt. Not only is this immaterial and speculative, but the argument is nonsensical. Bringing an FDCPA enforcement action does not immunize anyone from the underlying debt, which is a separate transaction.

"No section of the Act requires an inquiry into the worthiness of the debtor, or purports to protect only 'deserving' debtors. To the contrary, Congress has clearly indicated its belief that no consumer deserves to be abused in the collection process." _Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C._, 111 F.3d 1322, 1330 (7th Cir. 1997).

Defendant should be precluded from making any "deadbeat" claims, which Congress itself recognized as a fallacy.

Plaintiff's Motives.

The Act relies on and encourages consumers, such as Plaintiff, to act as private attorneys general to enforce the public policies expressed therein. 15 U.S.C. Sec. 1692k(a). Indeed, Congress stated its unequivocal intent "that private enforcement actions would be the primary enforcement tool of the Act." _Baker v.G.C. Servs. Corp._, 677 F.2d 775, 780-81 (9th Cir. 1982). Congress intended that the FDCPA be enforced by private attorneys general. _Wright v. Finance Service of Norwalk, Inc.,_ 22 F.3d 647, 650 (6th Cir. 1994).

Defense counsel may attempt to inflame the jury by claiming that plaintiff is in this case for the money.  By denigrating the motives of Plaintiff, Defendant contravenes Congress' express intent that Plaintiff properly has such a motive.

Defendant's argument is, of course, meant to reduce the statutory damage recovery. Nothing in the FDCPA allows the jury to consider Plaintiff's motives in awarding damages.  15 U.S.C.  Sec. 1692k.  To determine the amount of statutory damages, the jury considers the nature of the violation, the frequency and persistence of the violation, the extent to which the violation was intentional, and the number of violations.  Sec. 1692k(b)(1);  _Masuda v. Thomas Richards & Co._, 759 F. Supp. 1456, 1467 (C.D. Cal. 1991).   Thus, Plaintiff's motives are immaterial.

Other FDCPA Claims.

The only issue is whether this Defendant violated the FDCPA, not whether other Defendants might have violated the FDCPA as we have two Defendants in this case. To avoid confusion one Defendant should not blame the other for its violation as there is not action between the two Defendants.  Plaintiff respectfully moves the Court to preclude Defendants from alluding to, in any manner, the existence of FDCPA claims other than the one involved in this case and as to the other Defendants violation.   Such reference has no probative value and clearly would be for the sole purpose of unfair prejudice, confusing the issues of misleading the jury.  Fed.R. Evid. 403, 404, 608, 802.  _McKee v. Erikson, 37 Conn. App_. 146, 152-53, 654 A.2d 1263, 1267 (1995) (appeals to passion or prejudice have no place in the jury system); _DeFelice v. American Inter. Live Assur Co._, 112 F.3d 61, 67 (2d Cir. 1997) (evidence excluded when risk of confusing or distracting jury); _Soller vs. Moore_, 84F.3d 964 (7th Cir. 1996)  (same); _Haynes v. Coughlin_, 79 F.3d 285, 291-93 (2nd Cir. 1996) (evidence of other similar inadmissible and prejudicial}; _Lanham v. Whitfield_, 805 F.2d 970 (11th Cir. 1986) (evidence of other litigation

excluded; confuses the issues, misleading to the jury and causing prejudice to the party); *Bradley v. Soo Line RR. Co.,* 88 F.R.D. 307, 310 (E.D. Wis. 1980) (evidence that more than one claim filed by same Plaintiff against same Defendant is prejudicial).

### Existence of Debt.

The Defendant is required to comply with the FDCPA whether or not any debt is owed. 15 U.S.C. Sec. 1692a(3), (5), (6). The existence or validity of any underlying debt is not material in any FDCPA action. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982). Defendant should not be permitted to examine or refer to any other debt (the discredited "deadbeat" argument) or to whether the Plaintiff owes the debt underlying this case. It is simply irrelevant as to whether defendant violated the FDCPA.

### Attorney's Motives.

FDCPA Defendants often claim that the Plaintiff's attorney's fee recovery is the "engine running this suit." That claim is, again, contrary to the intent of Congress that the FDCPA be enforced by private attorneys rather than overburdened public servants. *Graziano v. Harrison*, 950 F.2d 107. 113-14 (3d Cir. 1991)(FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress' intent that the Act should be enforced by debtors acting as private attorneys general").

Moreover, the argument is spurious where, as here, it is completely within Defendant's power to keep Plaintiff's fees to a minimum. Defendants mount a stalwart defense with full awareness that they are exposing their clients to a higher award of fees by doing so. *MCGowan v. King, Inc*., 661 F.2d 48, 51 (5th Cir. 1981). See also *Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir. 1992). They cannot be heard to complain when this comes to pass.

Maintained Procedures

Because the Defendant's, RRVM and Harris, have not provided a written procedure or oral statement of a procedure that checks for debtor bankruptcy filing or for validation of the debtor's debt prior to collection efforts, these Defendant's should be precluded from introducing evidence as to a procedure that attempts to do either of these things. The use of evidence of a procedure is the very foundation of the Defendant's bona fide error defense.

Plaintiff contemplates the use of this type of evidence that has not been provided in discovery, since the Defendants have admitted the FDCPA violations, which would also include the violation of the Discharge, prejudicial and improper tactics which should be excluded.

The Defendant's RRVM and Harris filed an amended Answer on the 8th day of October, 2004, wherein they allege under paragraphs 30 and 31 the following new affirmative defense:

> 30. Any violation of the FDCPA was unintentional and resulted from a bona fide error.
>
> 31. Any alleged error which occurred in this matter occurred notwithstanding the maintenance of procedures reasonably adopted to avoid any such error.

The affirmative defense must be proven by the Defendants. In order for the affirmative defense of a bona fide error to be available to a Defendant, the Defendant must have and maintain a procedure that reasonably is expected to avoid these types of errors.

The Defendants in several different documents have described the procedure that RRVM used under oath to this court. The first description is found in the Defendant's responses to Plaintiff's interrogatories filed under oath on November 2, 2004 as follows:

> Interrogatory 2. Does RRVM have an established procedure for reviewing a file for collection before a letter or filing a suit for collection of a debt?
>
> A. If the answer is yes, what are the review procedure policies?

B. What procedures were followed in the Bynum matter?

Response: Yes

A. Lawyer reviews all documents received from a client. Require affidavits of client verifying that debt is due. Initial letter is prepared and reviewed by lawyer.

B. Standard procedure.

Interrogatory 3. What databases, skip location services, internet websites and information sources does RRVM use for skip tracing debtors and determining facts about the debtor?

A. Did you use any of these services regarding Donna Bynum before any letter or suit was filed?

B. …   C. …   D. …

Response: RRVM does not do skip tracing on debtors unless the debtor has moved and cannot be located. If the debtor cannot be located RRVM uses public records and Accurint.

A. No, as the address for Donna Bynum was valid so there was no reason to use skip tracing.

B. … C. …  D. …

Interrogatory 4. Did you contact the client, Cavalry, before sending any letter or filing a suit to collect the Bynum account?

A. If yes, who and when did you contact this person at Cavalry?

Response: No

Interrogatory 8. What information did RRVM review before sending each letter and before filing suit in the Bynum matter?

A. If any information was reviewed, please specifically identify the information received.

Response:  All documents received from Cavalry.

Interrogatory 12. Please identify all documents that were provided to RRVM and Harris by Cavalry prior to sending the letter to Mrs. Bynum in this matter?

Response:  Letter from Cavalry, contract of East Tulsa Dodge, statement of account, credit application, lien entry form, account disclosures and two affidavits.

Interrogatory 13.  Please identify all documents that RRVM and Harris were provided prior to filing suit against Mrs. Bynum in this matter.

Response: See Answer to interrogatory 12.

The response to the Interrogatory number 2 by the Defendant RRVM and Harris, clearly shows that they did nothing to inquire or make a good faith effort to determine if Mrs. Bynum, did in fact owe the debt.   RRVM answered the question of what they did, "Lawyer reviews all documents received from a client.  Require affidavits of client verifying that debt is due.  Initial letter is prepared and reviewed by lawyer.

By looking at these documents, the only thing that RRVM and Harris could determine was that Mrs. Bynum once upon a time purchased a car from Dodge, on credit financed by Cygnet.  Even the affidavit as to the validity of the debt came from an employee of Cavalry that had been appointed the attorney-in-fact for Cygnet.

The facts in the allegations of RRVM do not support the existence of a procedure that would reasonably be expected to avoid FDCPA violations.   Plaintiff respectfully suggests, to present any further or varying proof would be prejudicial to the Plaintiff and contrary to the

policy and procedure of the Court. In *Fox v Citicorp Credit Services, Inc.,* 15 F.3d 949 (10 Cir. 1996), the court stated, to establish a bona fide error defense the collector must demonstrate " the maintenance of procedures reasonably adopted to avoid any such error." Also in *Allen V NCO Fin. Servs., Inc.*, 2002 US Dist. Lexus 10513, 2002, the collector failed to demonstrate a bona fide error defense where it produced no documents of affidavits of the procedures it had in place to avoid such computer errors.

To avoid improper, prejudicial additional evidence and to restrict the case to the issue at hand (whether the Defendants violated the FDCPA), Plaintiff's Motion In Limine should be sustained.

### Maintained Procedures

Because the Defendants, Cavalry, have not provided a written procedure or oral statement of a procedure that is the directions for a collector to use when collecting an account and have also failed to provide a written description or documentation that establishes a system within the Cavalry computer system that checks for debtor bankruptcy filing or for validation of the debtor's debt prior to collection efforts, these Defendants should be precluded from introducing evidence as to a procedure that attempts to do either of these things. The use of evidence of a procedure is the very foundation of the Defendants bona fide error defense. Cavalry has been ordered by the Court to provide all documents that support such a procedure and none have been produced to date.

Plaintiff contemplates the use of this type of evidence that has not been provided in discovery, since the Defendants have admitted the FDCPA violations, which would also include the violation of the Discharge, prejudicial and improper tactics which should be excluded.

The affirmative defense of bona fide error must be proven by the Defendants. In order

for the affirmative defense of a bona fide error to be available to a Defendant, the Defendant must have and maintain a procedure that reasonably is expected to avoid these types of errors. Cavalry has provided a training manual which was not the manual in use at the time of the violations as admitted by Cavalry.  This manual is a training tool to educate the collector on areas of importance to Cavalry, not a procedure manual that tells the collector how to do the collecting.

The defendants in several different documents have described the Banko procedure that Cavalry uses to avoid collecting against the Bynum's.  Under the procedure that Cavalry relies is that Banko was checking every day for Bankruptcy filings on the Bynum's.  In fact, the procedure for everyday filing did not go into effect until February of 2004, long after the majority of the violations had occurred.   To allow any additional or a change in this testimony would be very prejudicial under the circumstances that Plaintiff has been after this information form the very beginning of this cause of action.

The facts in the allegations of Cavalry do not support the existence of a procedure that would reasonably be expected to avoid FDCPA violations or any other of the violations alleged. Plaintiff  respectfully suggests, to allow Cavalry present any further or varying proof would be prejudicial to the Plaintiff and contrary to the policy and procedure of the Court. In Fox v Citicorp Credit Services, Inc., 15 F.3d 949 (10 Cir 1996), the court stated, to establish a bona fide error defense the collector must demonstrate " the maintenance of procedures reasonably adopted to avoid any such error." Also in Allen V NCO Fin. Servs., Inc., 2002 US Dist. Lexus 10513, 2002, the collector failed to demonstrate a bona fide error defense where it produced no documents of affidavits of the procedures it had in place to avoid such computer errors.

To avoid improperly prejudicial and to restrict the case to the issue at hand (whether the Defendants violated the FDCPA), Plaintiff's Motion In Limine should be sustained.

Expert Witness

Because the Defendants RRVM and Harris have not listed an expert witness of any type in the exchange of witnesses, and have argued that an expert witness is necessary to establish the standard that RRVM and Harris should meet in reviewing and validating a debtor's debt before collections efforts are commenced, these Defendants should be excluded from providing expert testimony on this standard of care. The Defendants have the burden of proof on an affirmative defense and have offered no evidence of a procedure or an expert to support their theory.

Plaintiff contemplates the use of this type of evidence that has not been provided in discovery, since the Defendants have admitted the FDCPA violations, which would also include the violation of the Discharge, prejudicial and improper tactics which should be excluded.

Because Plaintiff's character is not an issue in this case and is not related to any claim of defense, Plaintiff moves that the Defendant's be precluded from denigrating Plaintiff of Plaintiff's status as a private attorney general enforcing public policy: and that Defendant's examination of Plaintiff and arguments be limited to the issues in this case.

The Defendants RRVM and Harris have not listed a designated expert witness to support a standard of care that is set out by the statute. Whether the standard of care has been met by the Defendants is a question of fact to be determined by the Jury, unless there is no evidence that supports a minimum standard. Here, there is no proof that any procedure was described by the

Defendants and therefore no basis for an expert to testify.  The failure of the Defendant to list an expert at the proper time and to allow the Defendants to provide an undeclared witness as an expert is contradictory to F.R.C.P. 26(a)(2).

Plaintiff moves that her Motion in Limine be sustained in each respect.

Respectfully submitted,

s/ Bruce Spence
Bruce A. Spence OBA#16310
1440 South Harvard Avenue
Tulsa, Oklahoma 74112
Telephone (918) 582-3266
Facsimile (918)582-3271
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

☒	I, Bruce A. Spence, hereby certify that on July 15, 2005, I electronically transmitted the foregoing document and its attachment or exhibits to the Clerk of the Court using ECF Systems for filing and transmittal of a Notice of electronic filing to the following registrants:

James Vogt
Attorney for Defendants
Benjamin Harris and Reynolds, Riding, Vogt and Harris

and

Mark A. Craige
Attorney for Defendant Cavalry

☐	I, Bruce A. Spence, hereby certify that o n June 15 2005, I served the foregoing document and its attachment or exhibits by first class mail postage prepaid, to the following:

s/ Bruce Spence