UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DONNA BYNUM,                                )
                                            )
                        Plaintiff,          )
                                            )
v.                                          )        Case No. 04-CV-0515-CVE-PJC
                                            )
CAVALRY PORTFOLIO SERVICES, L.L.C.,         )
as assigned to CYGNET-FMAC,                 )
CAVALRY SPVI, L.L.C., REYNOLDS,             )
RIDINGS, VOGT, AND MORGAN, and              )
BENJAMIN HARRIS,                            )
                                            )
                        Defendants.         )

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment and Brief in Support Thereof

(Dkt. # 57) filed by defendants Reynolds, Ridings, Vogt & Morgan ("RRVM") and Benjamin Harris,

and Plaintiff's Counter Motion for Summary Judgment (Dkt. # 65)[1] filed by plaintiff Donna Bynum.

Plaintiff brought this action alleging violation of the Fair Debt Collection Practices Act ("FDCPA"

or "the Act"), 15 U.S.C. §1692, et seq. These defendants move for summary judgment on the

ground that their actions are protected by the bona fide error provision of the FDCPA, 15 U.S.C. §

1692k(c), and plaintiff counter moves, arguing that the defense is unavailable to defendants.

## I.

This action arises out of debt collection efforts of RRVM, a law firm, and Benjamin Harris,

an RRVM associate, on behalf of its client, Cavalry Portfolio Services, L.L.C. ("Cavalry"),

plaintiff's creditor. Plaintiff's claim, as it relates to defendants RRVM and Harris, involves

relatively few facts, many of which are undisputed. On November 29, 2000, plaintiff filed a Chapter

---

[1]     Plaintiff's motion for summary judgment also serves as her response to defendants' motion
        for summary judgment.

7 bankruptcy petition with the United States Bankruptcy Court for the Northern District of Oklahoma. That court granted plaintiff a discharge in bankruptcy on February 27, 2001, pursuant to 11 U.S.C. § 727. At the time of her discharge, plaintiff listed Cygnet-FMAC as a creditor. Cygnet-FMAC later assigned its claim to Cavalry. In March 2004, Cavalry mailed a letter to RRVM, a law firm retained by Cavalry, referring Cavalry's claim against plaintiff for collection and directing RRVM to commence suit against plaintiff in Cavalry's name. Cavalry included with the referral letter documentation supporting the collection referral, including two signed affidavits stating that the debt was due, a credit application, a copy of plaintiff's contract with a local car dealership, a lien entry form, a statement of account, and an account disclosure display.

Harris acquired responsibility for plaintiff's account when Cavalry sent it to RRVM. A letter dated April 5, 2004 ("the April 5 letter") and signed by Harris informed plaintiff that Cavalry had retained RRVM to collect the outstanding balance owed by plaintiff, stated that plaintiff had thirty days to dispute the validity of the debt, and notified her that a failure to remit the outstanding balance or enter into satisfactory payment arrangements would result in legal action and/or continued collection efforts against her. Harris acknowledges that he authorized the mailing of the letter to plaintiff. The parties agree that plaintiff did not respond to the letter, although plaintiff insists that she did not respond because she had already informed Cavalry that the debt had been discharged during her bankruptcy proceedings.

On May 20, 2004, RRVM, again by Harris, filed a lawsuit against plaintiff, on behalf of Cavalry, in the District Court of Rogers County, Oklahoma. On May 27, 2004, Cavalry emailed RRVM to notify the law firm of plaintiff's February 2001 discharge in bankruptcy court. Upon receipt of that email, Harris contacted the process server retained by RRVM and instructed him not

2

to serve plaintiff.  The process server did not serve plaintiff, and the collection action against her was subsequently dismissed with prejudice on June 10, 2004.  During the course of these events, no employee of RRVM, including Harris, ever spoke with plaintiff, either by telephone or in person.

Defendants do not deny any of the foregoing facts.  Indeed, they admit that their transmission of a collection letter to plaintiff following her discharge in bankruptcy constitutes a violation of the FDCPA.  Defendants insist, however, that they are entitled to the protection of the bona fide error defense.  Plaintiff disagrees.  This disagreement is the basis of the parties' respective summary judgment motions.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The FDCPA proscribes the use by debt collectors[2] of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  "The list of practices within the ban of [section] 1692e is nonexhaustive, and a debt collection practice may violate the FDCPA even if not named within a specific subsection."  Caputo v. Professional Recovery Services, Inc., 261 F. Supp. 2d 1249, 1255 (D. Kan. 2003).  At issue are two actions taken by defendants: the mailing of the April 5 letter to plaintiff and the filing of a collection action against her in state court.  Plaintiff claims that, in taking these acts, defendants violated three provisions of the FDCPA: section 1692e(3), prohibiting the false representation or implication that any individual

---

[2]     The definition of  "debt collector," under the statute, encompasses attorneys who collect debts on behalf of their clients.  Heintz v. Jenkins, 514 U.S. 291, 299 (1995).

4

is an attorney or that any communication is from an attorney; section 1692e(10), prohibiting the use

of any false representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer; and section 1692e(2)(A), prohibiting the false representation

of the nature of a debt.   Although they do not attempt to classify their acts under the specific

provisions of the FDCPA, defendants concede that the mailing of the April 5 letter violated the Act.

Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 57) (hereinafter "Defendant's

Motion for Summary Judgment").[3]   The parties dispute whether the filing of the suit against plaintiff

without service of process constitutes a violation of the FDCPA.

Defendants contend that, because plaintiff was never served with a collection suit, no

actionable FDCPA violation occurred.   They rely upon Johnson v. Riddle, 305 F.3d 1107 (10th Cir.

2002), as support for the proposition that a FDCPA claim accrues only at the moment of service, not

at the time of filing.   In Johnson, the Tenth Circuit considered the applicable statute of limitations

under the FDCPA.   The Johnson defendant argued that the date of its alleged violation, for statute

---

[3]     Plaintiff commits a substantial portion of her briefing to establishing the fact of defendants'
violation of the FDCPA.   Specifically, she cites to cases establishing the requisite amount
of attorney involvement necessary to avoid a violation of sections 1692e(3) and 1692e(10)
of the Act.   See, e.g., Avila v. Rubin, 84 F.3d 222, 228 (7th Cir. 1996) ("[A]n attorney
sending dunning letters must be directly and personally involved in the mailing of the letters
in order to comply with the strictures of FDCPA.").   These arguments seem curious in light
of defendants' ready admission that they violated the Act.   Moreover, those cases do not
necessarily support plaintiff's claim of a FDCPA violation, since they are readily
distinguishable from the instant case. First, each of the cases involves the question of
whether a violation occurred under the FDCPA.   Here, the fact of defendants' violation is
conceded.   Second, in the cases cited, the collection letters generated were mass produced
by the thousands through the use of an electronic system and never reviewed by attorneys.
There is no evidence of such activities in this summary judgment record.   Finally, and
perhaps most importantly, none of the cases cited by plaintiff ever addresses the existence
or the applicability of the bona fide error defense under the FDCPA.

of limitation purposes, was the date of filing, not the date of service, thereby making plaintiff's FDCPA claim out of time.  Rejecting the defendant's claim, the court noted,

> [W]here the plaintiff's FDCPA claim arises from the instigation of a debt collection suit, the plaintiff does not have a complete and present cause of action, . . . and thus no violation occurs within the meaning of [section] 1692k(d) until the plaintiff has been served. . . . If the debt collector files suit against the FDCPA plaintiff but then elects to call off the process server and abandon the collection suit before the plaintiff has been served, it cannot be said that the abandoned lawsuit constitutes an attempt to collect on the debt within the meaning of the FDCPA . . . .

Id. at 1113 (internal citation and quotation marks omitted).

Although the court in Johnson specifically addressed the application of the statute of limitations under the FDCPA, the Tenth Circuit's holding makes clear that an actionable violation under the FDCPA does not arise at filing, but only after a plaintiff is served with a lawsuit.  See id. at 1114 n.4 ("[T]he decision of whether to serve the debtor is the creditor's last opportunity to comply with the FDCPA.").  Accordingly, the Court adopts defendants' view of the import of the Johnson opinion to the present case and holds that, in order to maintain an action under the FDCPA, a plaintiff must have been served.

In light of the foregoing, there is no genuine issue of material fact as to whether defendants' filing of a lawsuit against plaintiff constitutes a violation of the FDCPA.  The remaining issue is whether the mailing of a collection letter following discharge in bankruptcy is a violation of the Act.[4]

---

[4]    This Court is unsure that the mailing of a collection letter to plaintiff actually fits within section 1692e(3) and 1692e(10).  See Miller v. Allied Interstate, Inc., 2005 WL 1520802, at *1 (N.D. Ill. June 27, 2005) ("A demand to collect a discharged debt is considered a false collection activity under Section 1692e(2)(A).").

### III.

Under the FDCPA,

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. §1692k(c).  An FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that its violation of the Act was:  (1) unintentional; (2) a bona fide error; and (3) made despite the maintenance of procedures reasonably adapted to avoid the violation. Johnson, 305 F.3d at 1121.

### A.

As to the first prong, the Court must decide whether a defendant must show that the acts constituting the FDCPA violation were unintentional or merely establish that the violation of the statute was unintentional.  The Court has found no controlling Tenth Circuit precedent, and other courts have reached differing conclusions.  Compare Kort v. Diversified Collection Services, Inc., 394 F.3d 530, 537 (7th Cir. 2005) ("[T]he fact that [defendant] deliberately used the form and intentionally sent a personalized version of the form to the class members does not negate the bona fide error defense.  A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional."); Lewis v. ABC Business Services, Inc., 135 F.3d 389, 401 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional."); with Irwin v. Mascott, 112 F. Supp. 2d 937, 963 (N.D. Cal. 2000) (noting that a FDCPA plaintiff "need not prove either that [d]efendants knew that their debt collection practices violated the law or that they intended to violate the law.  Plaintiffs need only prove that (1) the [d]efendants knew what practices they were engaged in, and (2) the practices

violated the FDCPA.").[5]  At least one district court in this circuit has concluded that a defendant attempting to plead the bona fide error defense need only demonstrate that he did not intend to violate the act, not that he unintentionally engaged in the prohibited practice.  Caputo, 261 F. Supp. 2d at 1257 ("Like the Seventh Circuit, the court will not choose between the two possible intents and simply will assume that the defendants need only prove that they did not intend to violate the FDCPA.  Using this approach, the issue of intent becomes principally a credibility question as to the defendant's subjective intent to violate the Act.").

In the absence of controlling Tenth Circuit precedent, this Court adopts the view that a defendant need only demonstrate that it lacked the specific intent to violate the FDCPA.  This position is supported by the limited legislative history available.  See S. Rep. 95-382, at 5 (1977), reprinted in 1977 U.S.S.C.A.N. 1695, 1700 ("A debt collector has no liability, however, if he violates the act in any manner, including with regard to the act's coverage, when such violation is unintentional and occurred despite procedures designed to avoid such violations.").  Moreover, to hold otherwise would conceivably create a nearly insurmountable hurdle for defendants seeking the protection of the bona fide error defense.  See Lewis, 135 F.3d at 401 (noting that to require a showing of intent not to commit the acts violating the statute would "effectively negate the bona fide error defense").

---

[5]     Plaintiff cites the Seventh Circuit's opinion in Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161 (7th Cir. 1974), to support her claim that defendants must demonstrate that their acts, not the violation of the FDCPA, were unintentional.  The Seventh Circuit in Haynes addressed the necessary intent under the Truth in Lending Act, not the FDCPA, and has since clarified that a defendant need only demonstrate a lack of intent to violate the statute to receive the benefit of the bona fide error defense under the FDCPA.  See, e.g., Kort, 394 F.3d at 537.

There is no evidence in the record to support a finding that defendants intentionally violated the terms of the FDCPA, and the Court finds that no genuine issue of material fact as to defendant's intent to violate the Act has been raised.

**B.**

For an error on the part of a debt collector defendant to be "bona fide," it must be made in good faith, inadvertently, without fraud or deceit, and with faithfulness to one's duty or obligation. Caputo, 261 F. Supp. 2d at 1257; see also Kort, 394 F.3d at 538 (defining bona fide error as "error made in good faith; a genuine mistake, as opposed to a contrived mistake"). The court in Caputo concluded that the bona fide element imposes "an objective standard of reasonableness upon the asserted unintentional violation." 261 F. Supp. 2d at 1257.

In contacting and initiating suit against plaintiff, defendants relied upon Cavalry's representation of the status of plaintiff's debt. Although plaintiff argues that it was not reasonable for defendants to do so, the Court disagrees. The undisputed facts in the summary judgment record demonstrate that defendants reasonably relied on Cavalry's notice that plaintiff's debt was ripe for collection. Cavalry utilizes a verification system, Banko/Lexus Nexus, to ensure that debtors have not filed bankruptcy and maintains a policy of not forwarding for collection accounts of debtors who have filed for bankruptcy or have been discharged in bankruptcy. Defendants' Motion for Summary Judgment (Dkt. # 57), Affidavit of Cavalry Portfolio Services, Inc., at ¶¶ 3-4  Cavalry, moreover, has an oral agreement with defendants that it will not submit an account for collection to defendants if the debtor has filed for bankruptcy. Defendants' Motion for Summary Judgment (Dk. # 57),

Affidavit of Fred Morgan, at ¶ 7.  Although a precise number eludes the parties,[6] they appear to agree that no more than one percent of the accounts referred to RRVM by Cavalry has been mistakenly sent, i.e., accounts for debtors who had been discharged in bankruptcy.

Plaintiff provides no evidence that defendants should not have relied on this system with regard to her account.  The collection request sent by Cavalry was accompanied by documentation confirming the existence of the debt, including two signed, notarized affidavits, stating Cavalry's belief that the statement of plaintiff's account was accurate and providing defendants with no reason to believe that the collection should not be made.  Defendants' Motion for Summary Judgment (Dkt. # 57), Exs. 1- 9.  When defendants received plaintiff's file, they had no knowledge of plaintiff's bankruptcy discharge and remained unaware of the discharge when they mailed the April 5 letter.  Upon being informed by Cavalry of plaintiff's discharge, defendants instructed the process server not to serve plaintiff and moved that the state action against plaintiff be dismissed with prejudice.

There are no genuine issues of material fact as to whether defendants' violation of the FDCPA was bona fide.  The undisputed evidence reveals that defendant relied, in good faith, on the screening mechanisms employed by Cavalry and the informal work arrangement defendants maintained with Cavalry before sending the April 5 letter to plaintiff.  Upon discovering plaintiff's bankruptcy discharge, defendants immediately withdrew the collection suit against plaintiff and ceased collection activities.  Apprised of the foregoing, a reasonable factfinder could not conclude that defendants' error was not bona fide.

---

[6]     Fred Morgan, an RRVM lawyer, estimated that the number of wrongfully submitted accounts would total less than one percent of the claims received from Cavalry.  Defendant's Motion for Summary Judgment (Dkt. # 57), Affidavit of Fred Morgan, at ¶ 8.   Plaintiff argues that this is a sufficiently large number to alert RRVM that it could not reasonably rely upon Cavalry's referral system to ensure compliance with the FDCPA.

**C.**

Plaintiff's attack on defendant's policies and procedures is two-pronged,[7] challenging both the existence and the legal sufficiency of the policies and procedures utilized by RRVM.   She argues that defendants have failed to provide evidence of their existing policies aimed at preventing FDCPA violations.   Alternatively, she argues that the extent of RRVM policy is reliance on Cavalry's debt verification system and that such reliance is not sufficiently preventive to entitle defendants to the bona fide error defense.

The basis for plaintiff's first claim is unclear since the summary judgment record contains unrebutted evidence of the procedural protections, however unsophisticated, utilized by defendants. In response to plaintiff's interrogatories regarding RRVM procedures relating to debt collection, defendants provided the following:

> Interrogatory 1-A: "[W]hat are the requirements of RRVM before sending a demand letter or filing a suit to collect a debt?"
>
> Response: "Reviewed the documentation received from Calvary and opened a file."
>
> Interrogatory 2-A: "[W]hat are the review procedure policies?
>
> Response: "Lawyer reviews all documentation received from a client.   Require affidavits of clients verifying that debt is due.   Initial letter is prepared and reviewed by lawyer."

Plaintiff's Response to Defendant's RRVM's Motion for Summary Judgment and Plaintiff's Counter Motion for Summary Judgment (hereinafter "Plaintiff's Motion for Summary Judgment") (Dkt. # 65), Ex. 1, Responses to Interrogatories to Defendants Reynolds, Riding [sic], Vogt, Morgan, and

---

[7]     In fact, plaintiff's argument in this regard devolves into a much broader discussion of the standards of conduct imposed on attorneys under the Oklahoma Rules of Professional Conduct and Fed. R. Civ. P. 11.   As defendant correctly observes, these standards are different from those under the FDCPA and are inapplicable.

Benjamin Harris (hereinafter "Responses to Interrogatories"), at 3.  Defendants utilized "standard procedures" in handling plaintiff's account.  Plaintiff's Motion for Summary Judgment (Dkt. # 65), Ex. 1, Responses to Interrogatories, at 3.

An affidavit provided by Fred Morgan, an RRVM attorney, provides further information regarding policies in place at RRVM.   Two of RRVM's four attorneys are members of the Commercial Law League of America, which provides training to lawyers on FDCPA compliance, and Morgan's affidavit suggests that all members of the firm make a generalized attempt to remain apprised of developments relating to the Act.  Defendants' Motion for Summary Judgment (Dkt. # 27), Affidavit of Fred Morgan, at ¶¶ 4-5.  All new files are first reviewed by an attorney to ensure that a demand letter is warranted, and no correspondence is mailed from RRVM  or lawsuit filed by RRVM prior to an attorney's review.  Defendants' Motion for Summary Judgment (Dkt. # 27), Affidavit of Fred Morgan, at ¶ 9.  Further, lawyers engage in ongoing review of form collection letters utilized by RRVM to ensure compliance with the FDCPA.  Defendants' Motion for Summary Judgment (Dkt. # 27), Affidavit of Fred Morgan, at ¶ 9.  Finally, firm personnel are instructed as to the requirements of the FDCPA and are directed to inform the assigned lawyer of any notice of bankruptcy and to cease collection activities when the firm receives notice of bankruptcy. Defendants' Motion for Summary Judgment (Dkt. # 27), Affidavit of Fred Morgan, at ¶ 9.

Although plaintiff makes a special point to highlight in her briefs that she disputes the existence of policies and procedures at RRVM, she provides no evidentiary support for such a dispute.  The Court may not rely solely on plaintiff's bare allegation to create a genuine issue of material fact.  The Court concludes that RRVM policies and procedures exist.

Alternatively, plaintiff contends that even if such policies and procedures exist, defendants do not maintain an independent verification system by which to confirm the status of a debt.  As a consequence, she claims, the bona fide error defense is not available to them.  Specifically, plaintiff suggests that defendant should maintain a series of independent methods of confirming the status of a debt, including, inter alia, verifying the terms of a debtor's account, payment history, interest calculation, and bankruptcy status, confirming the particulars of the property that is the subject of the debt, and requiring a copy of the information acquired by Cavalry from Banko, the online debt verification system.

Other courts have explicitly rejected the contention that a third-party collector must independently verify the status of a debt prior to initiating collection efforts on behalf of a creditor client in order to avail itself of the bona fide error defense.  In Hyman v. Tate, 362 F.3d 965 (7th Cir. 2004), a case bearing notable factual similarities to the instant case, plaintiff filed suit under the FDCPA against a third-party debt collector, who sent plaintiff a collection letter following plaintiff's filing of a Chapter 13 bankruptcy petition.  Defendant received plaintiff's account from a bank, plaintiff's creditor, with which defendant had an informal agreement that the bank would not forward accounts for collection where the debtor had filed for bankruptcy.  At the time it sent the collection letter, defendant was unaware of plaintiff's pending bankruptcy, and when plaintiff called to inform defendant of the bankruptcy proceedings, defendant closed plaintiff's account and did not attempt collection any further.  Plaintiff unsuccessfully brought suit against defendant under the FDCPA.  In her appeal to the Seventh Circuit, plaintiff challenged the district court's conclusion that, even if the transmission of the letter constituted a violation of the FDCPA, defendant was entitled to the bona fide error defense.  Defendant, she claimed, was not permitted merely to rely on

the bank's description of her debt; it had to maintain "proactive procedures" to prevent wrongful

debt collection.  Id. at 968.

The court in Hyman dismissed plaintiff's claim:

> [T]he FDCPA does not require collectors to independently verify the validity of the debt to qualify for the bona fide error defense. . . . Although [defendant] could have done more to assure that bankruptcy proceedings had not been initiated, [section] 1692k(c) only requires collectors to adopt reasonable procedures, and as the district court found, it would not be reasonable to require [defendant] to independently confirm that the accounts forwarded by the bank were not in bankruptcy, where the bank, in the first instance, limited the accounts forwarded to those not in bankruptcy.

Id. (internal citations and quotation marks omitted).  The district court did not commit error, the

appellate court concluded, when it held that defendant was not required to research independently

each account for bankruptcy filings in order to take advantage of the bona fide error defense.  Id.;

see also Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1032 (6th Cir. 1992) (affirming district

court's summary judgment determination that FDCPA does not require an independent investigation

of a debt referred for collection by a third-party collector); Hulse v. Ocwen Federal Bank, FSB, 195

F. Supp. 2d 1188, 1210 (D. Or. 2002) ("[T]he FDCPA does not require independent verification of

the validity of the debt, and imposes no higher standard on a law firm acting to collect a debt.").

Based on the foregoing, the Court concludes that:  (1) no genuine issue of material fact exists

regarding the existence of policies and procedures to prevent FDCPA violations in use at RRVM;

and (2) even if a factfinder were to determine that the prophylactic measures taken by defendants

were limited to reliance upon Cavalry's representations, the applicable case law makes clear that

such reliance does not deprive defendants of the availability of the bona fide error defense.

**IV.**

For the foregoing reasons, the Court holds that no genuine issue of material fact exists as to defendants' entitlement to the bona fide error defense under the FDCPA.

**IT IS THEREFORE ORDERED** that defendants RRVM and Harris' motion for summary judgment (Dkt. # 57) is **granted**, and plaintiff's counter motion for summary judgment (Dkt. # 66) is **denied**.

**IT IS FURTHER ORDERED** that defendants RRVM and Harris' motion for summary judgment (Dkt. # 89) is **deemed moot**.   Plaintiff's motion for summary judgment (Dkt. # 90) remains **under consideration** as to defendant Cavalry, and is **deemed moot** as to defendants RRVM and Harris.

**IT IS FURTHER ORDERED** that defendants RRVM and Harris' motion in limine (Dkt. # 103) is also **deemed moot**.

Defendants' RRVM and Harris are hereby terminated from this case.


**DATED** this 29th day of September, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT