**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DONNA BYNUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CV-0515-CVE-PJC |
| ) | |
| CAVALRY PORTFOLIO SERVICES, L.L.C., ) | |
| as assigned to Cygnet-FMAC, CAVALRY SPVI, ) | |
| L.L.C., Reynolds, Riding, Vogt & Morgan, ) | |
| and BENJAMIN HARRIS, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is the motion for summary judgment (Dkt. # 90) filed by plaintiff, Donna Bynum. Bynum moves for summary judgment on her claim that defendants Cavalry Portfolio Services, L.L.C. and Cavalry SPVI, L.L.C. (collectively "Cavalry") engaged in violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692-1692o.

**I.**

Bynum, along with her husband, filed a voluntary petition in bankruptcy on November 29, 2000 and listed CYGNET-FMAC among those creditors holding secured claims against them. On February 27, 2001, that claim was discharged in bankruptcy, pursuant to 11 U.S.C. § 727. CYGNET-FMAC sold Bynum's account, along with others, to Cavalry SPVI, L.L.C., which referred the account to Cavalry Portfolio Services, L.L.C. for collection.

Upon purchasing Bynum's account, Cavalry sent an initial collection letter, dated June 27, 2003. That letter notified Bynum that Cavalry had purchased her account from CYGNET-FMAC, that it was set for collection, provided instruction on payment, and informed Bynum that she could contest the validity of the debt. Bynum claims she drafted and sent a letter to Cavalry, dated July 10, 2003, indicating that she received the June 27 collection letter and stating that the debt had been

discharged in bankruptcy proceedings. The letter also expressed Bynum's wish that Cavalry cease attempts to collect the debt. Cavalry denies receiving that letter.

Following its initial dunning letter, Cavalry engaged in further collection actions against Bynum. It admits to making four collection calls to Bynum's home and sending two additional collection letters. During the course of these efforts, Cavalry admits that it twice obtained copies of Bynum's consumer credit report, which included information concerning Bynum's discharge. Nevertheless, Cavalry insists that information regarding the discharge was not properly communicated to the appropriate department at Cavalry and that it took steps to collect on the debt unaware of Bynum's discharge in bankruptcy.

On March 19, 2004, Cavalry referred Bynum's account to the law firm of Reynolds, Riding, Vogt, and Morgan ("RRVM"), to initiate collection proceedings against Bynum. A correction in Cavalry's computer system in May 2004 revealed Cavalry's error, and on May 27, 2004, Cavalry sent an email to RRVM notifying the law firm that Bynum's debt had been discharged in bankruptcy. RRVM subsequently ceased collection efforts on behalf of Cavalry.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Bynum alleges Cavalry violated three provisions of the FDCPA: failing to cease communications in violation of 15 U.S.C. § 1692c; engaging in misrepresentations to a debtor regarding the legal status of a debt in violation of 15 U.S.C. § 1692e; and failing to send a communication validating a debt in violation of 15 U.S.C. § 1692g. The Court finds the existence

of a genuine issue of material fact as to two of these alleged violations and, in any event, determines that genuine issues of material fact exist as to Cavalry's entitlement to the bona fide error defense to Bynum's claims.

**A.**

Section 1692c of the FDCPA states, in pertinent part,

(a) Ceasing communication

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except –
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c)(1)-(3). This provision prevents a debt collector from engaging in repeated, harassing attempts to collect on a debt when a consumer makes clear, in writing, that she does not intend to pay the debt or wishes communications to cease.

Bynum alleges that upon receiving the June 27 letter from Cavalry informing her that her debt was due for collection, she sent a letter notifying Cavalry of her discharge in bankruptcy. That letter, dated July 10, 2003 reads:

> I received [a] letter today dated 6/27/03 that was postmark[ed] 7/3/03 in reference to the above account. This account was discharged in bankruptcy [o]n Feb[ruary] 27, 2001. The petition was filed [o]n Nov[ember] 29, 2000[,] 1:28 p.m. in U.S. Bankruptcy Court Northern District of Oklahoma, Case Number [] 00-04535-R

4

>Chapter 7[.]  The property was surrendered.  I would like no more attempts to collect this discharged debt.

Brief in Support of Plaintiff's Motion for Summary Judgment on Plaintiff's Complaint (hereinafter "Motion for Summary Judgment") (Dkt. # 91), Ex. 5, Cease-and-Desist Letter.  Cavalry denies receipt of that letter.  It challenges the validity of the certified mail receipt submitted by Bynum, implying in its response brief that the letter was never handled or delivered, since it lacks any sort of stamp from a United States Post Office.  Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (hereinafter "Defendant's Response") (Dkt. # 100), at 5.  Alternatively, Cavalry offers an explanation for the name "Prinz" appearing in the signature block on the delivery confirmation portion of the postal label plaintiff offers as evidence of the letter's delivery.  Greg Katz, a business analyst for Cavalry, represented in an affidavit that Prinz is the last name of a Cavalry employee who was terminated due to performance issues.  For reasons Katz does not know, Prinz failed to deliver the Bynum cessation letter to the appropriate Cavalry department, and Cavalry was, therefore, unaware of Bynum's bankruptcy discharge.  Id. at Ex. A, Affidavit of Cavalry Por[t]folio Services, L.L.C. (hereinafter "Cavalry Affidavit"), at ¶ 9.  Since Cavalry challenges its receipt of Bynum's cease-and-desist letter,[1] summary judgment as to Bynum's allegation of a violation of section 1692c is inappropriate.

**B.**

---

[1] If the letter was in fact properly handled and delivered by a postal employee, it is unclear whether Prinz's failure to deliver the letter to the appropriate department necessarily means that Cavalry did not "receive" the letter for the purpose of the statute.  The Court will not dwell on this issue, since, even assuming Bynum successfully established a violation under section 1692c, defendant has pled the bona fide error defense to any alleged violations.

5

Bynum also accuses Cavalry of violating 15 U.S.C. § 1692e.  That portion of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "the false representation of -- the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).  An attempt to collect a debt discharged in bankruptcy is considered to be an act of misrepresentation in violation of section 1692e, because "[a] demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay . . . or the discharge injunction . . . , it is not."  Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004).

Defendant admits to certain acts which, under section 1692e, constitute violations of the FDCPA:[2] (1) the transmission of three dunning letters, dated June 27, 2003, September 25, 2003, and October 6, 2003 and (2) the making of four collection calls to Bynum's residence on September 25, 2003,[3] October 7, 2003, October 8, 2003, and October 9, 2003.  Since the FDCPA is a strict liability statute, see Johnson, 305 F.3d at 1122 (collecting cases so holding), Bynum argues that Cavalry's concessions entitle her to summary judgment.  Cavalry responds that the statute's bona

---

[2] Defendant states repeatedly that there is "[n]o violation due to bona fide error." Defendant's Response (Dkt. # 100), at ¶¶ 16-17, 19.  The bona fide error defense merely protects a defendant from liability for violating the Act; it does not mean that the defendant's acts do not qualify as a violation.  See Johnson v. Riddle, 305 F.3d 1107, 1121 (10th Cir. 2002) ("Under the FDCPA, an affirmative defense exists to insulate debt collectors from liability even where they have violated the FDCPA . . . .").

[3] Bynum's motion for summary judgment also alleges a collection call on September 14, 2003, which Cavalry denies.  A review of an activity sheet on Bynum's account notes that a message was left on Bynum's answering machine on September 24, not September 14. Motion for Summary Judgment (Dkt. # 91), Ex. 14, Account Activity Sheet, at 8.

6

fide error defense shields it from liability for these actions. The Court discusses the applicability of the bona fide error defense in section IV infra.

### C.

The FDCPA further provides that, if within thirty days of a debtor's receipt of an initial collection notice from a debt collector, the debtor notifies the collector, in writing,

> that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Bynum contends that defendant violated section 1692g by failing to provide her with verification of her debt following its receipt of her cease-and-desist letter. Cavalry's violation is contingent, however, upon its receipt of Bynum's July 10 request that Cavalry cease communications regarding the debt. Since Cavalry maintains that it did not receive the letter, a genuine issue of material fact precludes a summary determination of Cavalry's violation of that provision.

### IV.

Even if plaintiff had sufficiently demonstrated the absence of genuine issues of material fact as to Cavalry's alleged violations of the FDCPA, the Court's analysis would not end there. Cavalry has alleged that the FDCPA's bona fide error defense shields it from liability for any of the violations Bynum claims.

Under the FDCPA,

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not

> intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. §1692k(c). A defendant seeking the protection of the bona fide error defense carries the burden of proving that its violation of the Act was: (1) unintentional; (2) a bona fide error; and (3) made despite the maintenance of procedures reasonably adapted to avoid the violation. Johnson, 305 F.3d at 1121.

**A.**

A defendant pleading the affirmative defense of bona fide error need show only that it did not intend to violate the statute, not that it unintentionally took the actions constituting violations. See, e.g., Kort v. Diversified Collection Services, Inc., 394 F.3d 530, 537 (7th Cir. 2005) ("[T]he fact that [defendant] deliberately used the form and intentionally sent a personalized version of the form to the class members does not negate the bona fide error defense. A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional."); Lewis v. ABC Business Services, Inc., 135 F.3d 389, 401 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional."). Caputo v. Prof'l Recovery Services, Inc., 261 F. Supp. 2d 1249, 1257 (D. Kan. 2003) ("Like the Seventh Circuit, the court will not choose between the two possible intents and simply will assume that the defendants need only prove that they did not intend to violate the FDCPA.").

Cavalry does not deny that it intentionally took steps to collect from Bynum, but a genuine dispute exists as to whether it took those steps with the intent to collect on a previously discharged debt, that is, in violation of the FDCPA. Katz affied that, because a typographical error occurred in the course of inputting the date of Bynum's loan into Cavalry's computer system, Banko, a computer database utilized to identify bankruptcy discharges, did not identify Bynum's discharge.

Defendant's Response (Dkt. # 100), Ex. A, Cavalry Affidavit, at ¶ 8. In addition, and as noted previously, Cavalry denies receiving notice of Bynum's 2001 discharge by way of the July 10 cease-and-desist letter  As a consequence of these errors, Cavalry argues, it believed that Bynum's debt remained outstanding and ripe for collection and that its actions complied fully with the FDCPA. The Court finds that Cavalry has raised a genuine issue of material fact as to its intent to violate the FDCPA.

**B.**

For an error on the part of a debt collector defendant to be "bona fide," it must be made in good faith, inadvertently, without fraud or deceit, and with faithfulness to one's duty or obligation. Caputo, 261 F. Supp. 2d at 1257; see also Kort, 394 F.3d at 538 (defining bona fide error as "error made in good faith; a genuine mistake, as opposed to a contrived mistake"). The court in Caputo concluded that the bona fide element imposes "an objective standard of reasonableness upon the asserted unintentional violation." 261 F. Supp. 2d at 1257.

Bynum contends that Cavalry's collection activities could not have been taken in good faith, since Cavalry pursued collection in spite of awareness of Bynum's discharge. Bynum's husband testified that, on three occasions, when Calvary employees called the Bynum residence, he answered the phone and informed the employee that his wife had sent a letter notifying Cavalry of the bankruptcy discharge and asking that the phone calls cease.[4] Motion for Summary Judgment (Dkt. # 91), Deposition of John Bynum, at 11-14. Bynum also argues that Cavalry had repeated access

---

[4]  Defendant accuses plaintiff of creating this testimony "out of thin air in an effort to support her case and to fool the Court and opposing counsel." Defendant's Response (Dkt. # 100), at 7. John Bynum's testimony does, however, recount three conversations with Cavalry personnel who called his home.

9

to documents which contained information regarding her bankruptcy discharge. She points to a notation in her credit report indicating that Cavalry obtained information from that report in February 2003. Motion for Summary Judgment (Dkt. # 91), Ex. 10, Consumer Report, at 5. Moreover, Cavalry admits pulling a copy of Bynum's credit bureau report on August 28, 2003 and again on March 16, 2004, two days before her account was referred to RRVM for collection. Each of those documents contains information regarding Bynum's 2001 discharge. Id. at Ex. 10, Consumer Report; Ex. 34 Trans Union Credit Report.

Cavalry denies the occurrence of any two-way conversations between Cavalry employees and Bynum's husband. It further responds that its February 2003 acquisition of information from Bynum's credit report was made in connection with the purchase of a large portfolio of consumer paper from CYGNET, Defendant's Response (Dkt. # 100), Ex. A, Cavalry Affidavit, at ¶ 7, suggesting that Cavalry made no extensive review of the information in the report at that time. While it concedes that Cavalry employees pulled Bynum's credit report in August 2003 and March 2004, it asserts that employee errors, not bad faith, motivated its ongoing collection attempts against Bynum. As an explanation for the approval of Bynum's account for legal action shortly after Cavalry's receipt of Bynum's credit report, Katz represented that "the employee charged with conducting the legal review process made an error by failing to follow the established policies and guidelines as set forth in the legal manual." Id. at ¶ 11. This mistake, coupled with prior personnel mistakes -- incorrect data entry and Printz's failure to deliver Bynum's cease-and-desist letter properly -- prevented defendant's system from identifying Bynum's bankruptcy discharge and allowed the continuation of collection efforts. Cavalry insists, however, that those efforts were made

in good faith, since it was unaware of Bynum's discharge. The Court finds that Cavalry has raised a genuine issue of material fact as to its good faith belief in the propriety of its collection activities.

**C.**

Bynum argues that Cavalry has failed to provide evidence demonstrating the existence of policies and procedures geared toward avoiding violations of the FDCPA. Cavalry has, however, submitted evidence that it subjects its employees to training in proper collection procedures, maintains departments devoted to compliance with the FDCPA and subjects each of its accounts to repeated runs through Banko, a system advertised as an exhaustive database of bankruptcy information and. Id. at Ex. A, Cavalry Affidavit, at ¶¶ 5-6, 12.[5]

The Court finds that genuine issues of material fact as to Cavalry's alleged violations of the provisions of the FDCPA and its entitlement to the protection of the bona fide error defense preclude summary judgment.

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Dkt. # 90) is hereby **denied**.

**DATED** this 30th day of March, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Cavalry has also submitted a document entitled "FDCPA Training Manual," which provides an explanation of the purposes of the FDCPA, emphasizes the strict liability of the statute, outlines Cavalry's policy for compliance with the statute, and includes a chapter devoted to the handling of accounts subject to bankruptcy. Defendant's Response (Dkt. # 100), Ex. C, Cavalry FDCPA Training Manual. That document is the product of a revision occurring in January 2004 and provides little insight into the policies and procedures in place at the time of the alleged violations.