**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DONNA BYNUM, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 04-CV-0515-CVE-PJC |
| ) | |
| CAVALRY PORTFOLIO SERVICES, L.L.C., ) | |
| as assigned to Cygnet-FMAC, CAVALRY SPVI, ) | |
| L.L.C., Reynolds, Riding, Vogt & Morgan, ) | |
| and BENJAMIN HARRIS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court is defendants' Motion to Reconsider Order Regarding Motion in Limine (Dkt. # 153). Defendants, Cavalry Portfolio Services, L.L.C. and Cavalry SPVI, L.L.C. (collectively "Cavalry") move, pursuant to Rules 59(a) and (e) and 60(b) of the Federal Rules of Civil Procedure, for reconsideration of the Court's Opinion and Order (Dkt. # 152) on Cavalry's motion in limine (Dkt. # 99).

### I.

Rule 60(b)[1] permits a party to seek relief from a final judgment, order, or proceeding due to (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

---

[1] The provisions of Rule 59 Cavalry cites govern motions for new trial or to amend or alter a judgment. This matter has yet to go to trial, and judgment has not been entered in favor of either party. Rule 59 is, therefore, not a basis for the relief sought by defendants.

prospective application; or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b). "Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances. . . . Parties seeking relief under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an appeal." Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1289 (10th Cir. 2005); Pelican Production Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990) ("The district court has substantial discretion in connection with a Rule 60(b) motion.") (citation omitted).

## II.

Cavalry contends that the Court incorrectly determined that its motion in limine did not provide legal support for the proposition that a plaintiff suing for damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, must provide expert testimony in order to establish causation. It lists cases cited in its original motion, which it believes support its view. The Court reviewed those cases in making its initial in limine ruling and determined that the cases do not support Cavalry's claim regarding the need for expert testimony. In light of Cavalry's motion, the Court explains more fully the basis of that determination, evaluating each case in turn.

In Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001), the Fifth Circuit evaluated the sufficiency of the evidence offered during a jury trial in which plaintiff alleged emotional distress due to defendant's violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. At trial, plaintiff offered the following testimony concerning his reaction to seeing an inaccurate credit report:

> A: Very upset, angry. And it just was that, you know, all things I had done, the company to not--they didn't hear me. I had told them over and over again but they didn't listen to me, you know. So that's how I felt.

> Q: You felt like nobody was listening?
>
> A: Felt like nobody was listening.

246 F.3d at 371. He also testified that he "felt like, if you [k]now anything about a maze, it's like being trapped inside of something that you can't get out of." Id.

The Fifth Circuit pointed out that it had applied to other federal claims the Supreme Court's statement in Carey v. Piphus, 435 U.S. 247 (1978), that a jury award for emotional distress damages in the context of an action brought under 42 U.S.C. § 1983, "must be supported by evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." 435 U.S. at 264 n. 20. To establish "intangible loss," the Fifth Circuit held, "Carey requires a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." Cousin, 246 F.3d at 371. Determining that plaintiff's testimony did not meet that standard, the Fifth Circuit vacated the jury award for emotional distress for insufficient evidence of actual damages. Id.

Relying on Cousin, the district court in Myers v. Bennett Law Offices, 238 F. Supp. 2d 1196 (D. Nev. 2002), reached a similar conclusion. In Myers, plaintiffs alleged that a law firm, through the actions of an employee, had retrieved their credit information for an improper purpose, in violation of the FCRA. Plaintiffs sought damages for, inter alia, emotional distress caused by the alleged conduct. The defendant moved for summary judgment and argued that plaintiff could not prove emotional distress on the basis of the evidence then before the Court. That evidence consisted of affidavits provided by plaintiffs, which included conclusory claims of emotional distress. Quoting the language of Cousin, the district court found the plaintiffs' conclusory affidavits insufficient as a matter of law to support an award of damages for emotional distress. Id. at 1206.

Cousin and Myers are analogous to the present case, involving a comparable federal statute and discussing the necessary showing for the award of actual damages for emotional distress. Neither of those cases provides support for the proposition that expert testimony is necessary to establish emotional distress. To the extent that the cases apply, they establish only that the self-serving, conclusory allegations of a plaintiff are not enough to support an award of emotional distress damages, not that expert testimony is a prerequisite to recovery of such damages.

Cavalry also cites Black v. Baxter Healthcare Corp., No. 96-55749, 1997 WL 686002 (9th Cir. Nov. 3, 1997). In Black, the Ninth Circuit considered the district court's grant of summary judgment against a plaintiff who brought a claim of wrongful termination under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and California state law. The sole mention of emotional distress damages in that case relates to plaintiff's claim of intentional infliction of emotional distress. Plaintiff alleged that he was under the care of a psychologist and had become "seclusive and anxious." Id. at *4. The court affirmed the district court's grant of summary judgment on plaintiff's intentional infliction of emotional distress claim on the ground that he failed to demonstrate that he was terminated because of his race. Id. Black contains no mention of expert testimony.

In Frisone v. United States, 270 F.2d 401 (9th Cir. 1959), the Ninth Circuit evaluated the trial court's evidentiary ruling on a criminal defendant's ability to testify regarding his mental health. The government had charged defendant with committing perjury in a prior criminal proceeding. At trial, defendant argued that he suffered from an impaired memory and was, therefore, without the necessary intent to testify falsely. When his attorney attempted to elicit from appellant the cause

4

of his poor memory, the United States objected to defendant's testimony regarding his treatment for mental health problems while a member of the United States Marine Corps.

The court in Frisone set forth certain general principles regarding a lay witness's ability to testify:

> As a general rule, a witness may not testify to his own medical condition, past or present. . . . On the other hand, lay witnesses have been allowed to testify as to common illnesses the existence or treatment of which can be termed a 'fact' within the common knowledge of lay persons; . . . . A similar line has been drawn with respect to lay testimony on mental condition. A witness has been held to be competent to testify that she was nervous, . . . that he had a worried and anxious state of mind, . . . .

270 F.2d at 403 (internal citations omitted). Although the court noted that "only expert testimony will be allowed on technical questions of causation," id., it made that declaration with reference to the physiological causal relationship between appellant's claimed mental illness and existing memory loss. For that reason, the court's statement is not directly applicable here.

The plaintiff in Walton v. United States, 770 F. Supp. 731 (D. Mass. 1991), was the administratrix of the estate of Curtis Walton, a veteran of the United States Army, who received dental treatment at a Veterans Administration Hospital in Northampton, Massachusetts. During the course of an extraction procedure, Walton's physician administered Xylocaine, a local anesthetic, in addition to epinephrine, a vasoconstricting drug known to cause the elevation of blood pressure. Walton, who had a history of elevated blood pressure, died during the course of the procedure, and plaintiff sued under the Federal Tort Claims Act, alleging that the doctor's use of epinephrine on Walton was negligent and the proximate cause of plaintiff's death.

The court in Walton determined that the Massachusetts medical malpractice law applied to the case. 770 F. Supp. at 738. That law requires that a plaintiff establish a causal connection

between a physician's negligence and the plaintiff's injuries. Id. at 739. Generally, the court held, a plaintiff must establish that causal link with expert testimony:

> The trier of fact may not speculate about the results of administering or withholding particular therapy. Thus, . . . if the causation question involves questions of medical science or technology, the [trier of fact] requires the assistance of expert testimony. . . . The Court finds that plaintiff has not established a causal connection between the administration of Xylocaine with epinephrine to Curtis Walton on July 16, 1985 and Curtis Walton's death later that day. The causal link generally must be established by expert testimony that the injury was more probably than not a result of the physician's negligence.

Id. (internal citations and quotation marks omitted).

While the Court finds no fault with the analysis in Walton, it rejects the applicability of that analysis to this case. There, the court dealt with a rule of state law in the area of medical malpractice. Defendants have offered no reason why the application of that rule should be extended to the completely unrelated area of the regulation of debt collection practices under federal law.

Cohen v. Western Hotels, Inc., 276 F.2d 26 (9th Cir. 1960), addressed the appropriateness of a district court's refusal to admit the testimony of a proposed expert in a case where plaintiff alleged that her fall in the lobby of a hotel was caused by improper placement of a rug. Plaintiff's expert purported to possess specialized knowledge regarding the appropriate method of laying rugs. The court determined that the district court properly excluded the evidence because the propriety of the rug's placement could be ascertained by the jury without expert testimony. Id. at 27 ("When the subject of inquiry is one which common knowledge would enable one to decide, it is not a proper subject for expert testimony . . . Ordinary experience afforded the jury this competence.").

Defendants' reliance upon Cohen is curious. In addition to being a dated case from a different circuit, it also states a principle that appears to be in direct contradiction to the claim made by defendants that expert testimony is necessary to determine both causation and damages.

The Ninth Circuit's opinion in Phillips v. United States, 356 F.2d 297 (9th Cir. 1965), involved a criminal action against individuals charged with mail fraud and conspiracy. The United States charged that defendants, through the use of false representations concerning the suitability for development of certain land parcels, induced others to purchase that land. A jury convicted defendants, and, on appeal, defendants contended that the trial court erred in receiving the testimony of several purchasers on the impression they received from the false representations. Defendants argued that the district court should have not permitted the purchasers to offer testimony on matters in which they had no expertise. The court of appeals rejected defendants' challenge on the ground that the views expressed were not opinion testimony, as the purchasers were merely testifying to their state of mind at a prior point in time. 356 F.2d at 308 ("The state of a victim's mind at a previous point in time is not the expression of an opinion within the meaning of the rule referred to b[y] appellants. This is nonetheless true where the state of mind necessarily evinces an opinion formulated by that person at that previous point in time.").

Phillips is so distinct from the present case in every material respect, including the nature of the action and the issue presented, that the Court goes no further than to state that it has no applicability to the issue raised in this matter.

Cavalry, finally, relies upon the Second Circuit's opinion in Boucher v. United States Suzuki Motor Corp., 73 F.3d 18 (2d Cir. 1996). There, the court considered the district court's admission of expert testimony regarding plaintiff's lost wages after a jury awarded plaintiff $180,000 in damages for lost earnings due to the injuries sustained when a motorcycle crate frame fell on plaintiff's arm. On appeal, defendant did not contest liability, but argued that the testimony offered by plaintiff's expert regarding his lost wages was impermissibly speculative. The Second Circuit

agreed and vacated the judgment as to the extent of past and future lost earnings and remanded the matter to the district court for determination of lost wages. 73 F.3d at 23.

The court's conclusion in Boucher does not speak to the question of whether a plaintiff alleging lost wages must, as defendants claim, provide expert testimony establishing those losses. The Court has found no cases considering the issue in the context of the FDCPA, but existing precedent suggests that expert testimony may be helpful, but is not always necessary. Compare Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 270 (5th Cir. 1994) ("Grizzle contends that in cases filed by low to medium income persons, involving a small amount of lost wages and no front pay, expert testimony is unnecessary and not economically feasible . . . . It may be that in such cases expert testimony is unnecessary to apprise the jury of plaintiff's lost wages. A plaintiff may be able to testify to such amounts in simple cases."); Cassino v. Reichold Chemicals, Inc., 817 F.2d 1338, 1347 (9th Cir. 1987) ("[S]everal circuits have adopted the view that as long as the jury is properly instructed, expert testimony is not an absolute prerequisite to submitting to the jury the issue of future lost earnings and their reduction to present value.") with Weil v. Seltzer, 873 F.2d 1453, 1464 (D.C. Cir. 1989) ("[T]he task of projecting a person's lost earnings lends itself to clarification by expert testimony because it involves the use of statistical techniques and requires a broad knowledge of economics.").

Defendants have not persuaded the Court that this case presents questions of such complexity that a jury may not determine plaintiff's lost earnings without the assistance of an expert.

## II.

For the reasons outlined above, the Court reaffirms its earlier statement that Cavalry has failed to provide legal support for the proposition that plaintiff may not successfully make out a

claim for emotional distress damages, medical costs, or lost earnings without expert testimony. Moreover, the evidence presently before the Court prevents it from assessing the sufficiency of the evidence plaintiff intends to provide in support of her claim. The Court notes, however, that all rulings in limine are, by their very nature, preliminary, and the court may change its ruling at any time for whatever reason it deems appropriate. Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995). Thus, this Opinion and Order does not preclude Cavalry from reurging its motion for exclusion on appropriate grounds.

**IT IS THEREFORE ORDERED** that defendants' Rule 60(b) motion (Dkt. # 153) is hereby **denied**.

**DATED** this 13th day of April, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT