**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DONNA BYNUM,                                )<br>                                                        )<br>            Plaintiff,                          )<br>                                                        )<br>v.                                                      )   Case No. 04-CV-0515-CVE-PJC<br>                                                        )<br>CAVALRY PORTFOLIO SERVICES, L.L.C., )<br>as assigned to Cygnet-FMAC, CAVALRY SPVI, )<br>L.L.C., Reynolds, Riding, Vogt & Morgan,  )<br>and BENJAMIN HARRIS,                 )<br>                                                        )<br>            Defendants.                    )  | |

## OPINION AND ORDER

Now before the Court is plaintiff Donna Bynum's motion for summary judgment (Dkt. # 127) on her motion for a finding of contempt of a discharge order issued by the bankruptcy court.

**I.**

Bynum, along with her husband, filed a voluntary petition in bankruptcy on November 29, 2000 and listed CYGNET-FMAC among those creditors holding secured claims against them. On February 27, 2001, the bankruptcy court issued a discharge as to the CYGNET-FMAC claim, pursuant to 11 U.S.C. § 727. CYGNET-FMAC sold Bynum's account, along with others, to Cavalry SPVI, L.L.C., which referred the account to Cavalry Portfolio Services, L.L.C. for collection.

Upon purchasing Bynum's account, Cavalry sent an initial collection letter, dated June 27, 2003. That letter notified Bynum that Cavalry had purchased her account from CYGNET-FMAC, that it was set for collection, provided instruction on payment, and informed Bynum that she could contest the validity of the debt. Bynum claims she drafted and sent a letter to Cavalry, dated July 10, 2003, indicating that she received the June 27 collection letter and stating that the debt had been

discharged in bankruptcy proceedings. The letter also expressed Bynum's wish that Cavalry cease attempts to collect the debt. Cavalry denies receiving that letter.

Following its initial dunning letter, Cavalry engaged in further collection actions against Bynum. It admits to making four collection calls to Bynum's home and sending two additional collection letters. During the course of these efforts, Cavalry admits that it twice obtained copies of Bynum's consumer credit report, which included information concerning Bynum's discharge. Nevertheless, Cavalry insists that information regarding the discharge was not properly communicated to the appropriate department at Cavalry and that it took steps to collect on the debt unaware of Bynum's discharge in bankruptcy.

On March 19, 2004, Cavalry referred Bynum's account to the law firm of Reynolds, Riding, Vogt, and Morgan ("RRVM"), to initiate collection proceedings against Bynum. A correction in Cavalry's computer system in May 2004 revealed Cavalry's error, and on May 27, 2004, Cavalry sent an email to RRVM notifying the law firm that Bynum's debt had been discharged in bankruptcy. RRVM subsequently ceased collection efforts on behalf of Cavalry.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Bynum moves for summary judgment on her claim that Cavalry's collection activities violated the discharge order entered by the bankruptcy court in February 2001. "A debtor dunned after filing for bankruptcy has another potential remedy: ask the bankruptcy judge to hold the other

3

party in contempt of either the automatic stay or the discharge injunction." Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004).[1]

By law, Bynum's February 2001 discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524(a)(2). Section 105 of Title 11 provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Tenth Circuit has interpreted section 105 to allow for the issuance of a civil contempt citation when creditors violate a court-imposed discharge injunction. In re Skinner, 917 F.2d 444, 447 (10th Cir. 1990)

To succeed on a motion for contempt of a discharge order, a plaintiff must demonstrate that the creditor willfully violated the discharge injunction imposed pursuant to section 524. Randolph, 368 F.3d at 728; In re Faust, 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998). A creditor willfully violates a discharge injunction if the creditor (1) knows that the discharge injunction was invoked, and (2) intends the actions which violates the injunction. Id.[2] Bynum must demonstrate Cavalry's

---

[1] At the parties' request, and in the interest of minimizing inconvenience, the Court withdrew the reference to the bankruptcy court of the motion for contempt and consolidated the actions pending before this Court with the motion for contempt. Of course, the Court, not the jury, will decide the contempt issue.

[2] Because of the different scienter standards imposed under the bankruptcy statute and the Fair Debt Collection Practices Act, some courts have determined that the Bankruptcy Code provides the sole relief available to an individual who is subjected to collection activities following a discharge in bankruptcy. See, e.g., Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002). The Court finds persuasive the analysis of the Seventh Circuit in Randolph, which holds otherwise. 368 F.3d at 731 ("Overlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both.").

4

knowledge of the existing injunction at the time it took its collection actions.[3] Cavalry insists that it took its collection actions without knowledge of Bynum's discharge and has offered evidence that due to a series of errors in Cavalry's operations, it did not possess the requisite awareness of the discharge to establish liability.[4] Accordingly, a genuine issue of material fact as to Cavalry's knowledge of the bankruptcy discharge precludes summary judgment.

## IV.

For the foregoing reasons, the Court hereby denies Bynum's motion for summary judgment (Dkt. # 127) on its claim for contempt of the bankruptcy court's discharge order.

**DATED** this 12th day of May, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] This is the case whether a plaintiff asks the Court to issue a contempt finding pursuant to its inherent contempt power or the statutory contempt authority provided bankruptcy courts under section 105. See FTC v. Kuykendall, 371 F.3d 745, 756-57 (10th Cir. 2004) (noting, in the context of a non-bankruptcy civil contempt proceeding, that a plaintiff has the burden of proving by clear and convincing evidence that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order).

[4] The substance of that evidence is discussed more fully in the Court's Opinion and Order (Dkt. # 150) denying Bynum's motion for summary judgment on her claim for violations of the Fair Debt Collection Practices Act, and the Court does not reiterate that evidence here.